**BATTLEFIELD BUILDERS, INC., Appellant,**

v.

**Thomas W. SWANGO; Sarah J. Swango; Harry H. Horning; Susan M. Horning and Financial Planning Center of Manassas, Inc., Appellees.**

No. 83–1797.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1984.

Decided Sept. 20, 1984.

Michael L. O'Reilly, Vienna, Va. (Raymond J. Diaz, Rees, Broome & Diaz, P.C., Vienna, Va., on brief), for appellant.

Brian P. Gettings, Arlington, Va. (Cohen, Gettings, Alper & Dunham, Arlington, Va., G. Robert Blakey, Notre Dame Law School, Notre Dame, Ind., on brief), for appellees.

Before WINTER, Chief Judge, CHAP-MAN, Circuit Judge, and RAMSEY,* District Judge.

HARRISON L. WINTER, Chief Judge:

Plaintiff sued defendants in a civil action filed under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), seeking treble damages, costs and attorney's fees. Violations of the Act were alleged to have occurred with respect to certain property transactions between the parties. The district court, however, granted a motion under Rule 12, Fed. R.Civ.P., ruling that plaintiff had not alleged facts giving rise to a meritorious cause of action under the Act. It therefore dismissed the complaint.

Plaintiff appeals and we reverse. We hold that plaintiff has alleged a meritorious cause of action under the Act. We remand the case to the district court for further proceedings.

## I.

To test the legal sufficiency of plaintiff's allegations, we must begin with an outline of the Act's requirements for recovery.

Suit was brought under 18 U.S.C. § 1964(c) which authorizes a civil action by any person injured in his business or property as a result of a violation of § 1962.[1] Plaintiff claims that defendant violated § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

As is apparent when § 1962(c) is read, the key phrase in this case is "pattern of rack-

eteering activity." The definition of that phrase is found in § 1961, which, so far as is pertinent to this case, defines "racketeering activity" as "extortion ... chargeable under State law and punishable by imprisonment for more than one year ...," and defines "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity ...."

Because the definition of "racketeering activity," so far as pertinent here, incorporates state law, we must also consider Va. Code § 18.2–59, which provides:

If any person threaten injury to the character, person, or property of another person or accuse him of any offense and thereby extort money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, he shall be guilty of a Class 5 felony.

A Class 5 felony is punishable by confinement of one to ten years, Va.Code § 18.2–10(e); thus extortion under Virginia law qualifies as a "racketeering activity" for purposes of RICO. The same is true with respect to extortion attempts. An attempt to extort is made punishable as a Class 6 felony, Va.Code § 18.2–26(3), and the term of imprisonment is fixed as not less than one year nor more than five, Va.Code § 18.2–10(f).

From this recital of the legal framework, it thus appears that plaintiff must allege two acts of extortion within a ten-year period after October 15, 1970 in order to formulate a complaint which will withstand a motion under Rule 12 for dismissal for failure to state a claim upon which relief can be granted.

We turn to plaintiff's allegations construing them, as we must when a motion under

---

* Honorable Norman P. Ramsey, United States District Judge for the District of Maryland, sitting by designation.

1. The text of § 1964(c) follows:
   Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Rule 12 has been granted, in the light most favorable to plaintiff. *See* 5 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1357, at 600–602; *Thompson v. Brotherhood of Sleeping Car Porters*, 316 F.2d 191, 199 (4 Cir.1963).

Plaintiff alleges that it was the developer of Stonewall Square Condominium, an eighteen-unit office condominium in Manassas, Virginia. Plaintiff contracted to sell Unit 3C to defendants Thomas W. Swango and Harry H. Horning, and on December 22, 1981, at the direction of these two defendants and their wives (also named as defendants), conveyed title to Unit 3C to defendants Thomas W. Swango and Sarah J. Swango for the use and benefit of all defendants.

Thereafter plaintiff had the opportunity to lease a block of fifteen units, necessarily including Unit 3C owned by defendants, to International Business Machines Corporation. Plaintiff advised defendants of this opportunity and its need to recapture Unit 3C in April 1982. Plaintiff offered to convey a more valuable unit to defendants and move the business and property of defendants to the new unit, without interruption to their business, in exchange for a reconveyance of Unit 3C. Defendants represented that they would agree to the exchange when plaintiff successfully concluded its negotiations with IBM. "The Defendants knew at the time they made the representation that they would not make the conveyance."

In May 1982, plaintiff and defendants "for valuable consideration, entered into a contract" to make the exchange. Defendants, however, "knew at the time of entering into the contract that they would not convey Unit 3C to [plaintiff] and had no intention of conveying Unit 3C to [plaintiff]." Plaintiff, however, in reliance on defendants' representations and the contract, completed its negotiations with IBM. When, in July 1982, it requested defendants to convey to it title to Unit 3C in exchange for title to Unit 1B, defendants refused to do so unless plaintiff paid them $20,000 " 'punitive monies' ", accepted only a leasehold interest in Unit 3C rather than title, and sold Unit 1B to defendants Harry and Susan Horning for $45,000 less than its fair market value. To avoid the economic harm which would result from the loss of the lease it had with IBM, plaintiff acceded to defendants' demands and all of the individual defendants shared in the proceeds.

After IBM took possession of the premises, defendants began a pattern of harassment against plaintiff "for the sole purpose of extorting additional monies." They contacted IBM asserting that it was unlawfully on the premises; they refused to accept rent checks and instituted groundless eviction proceedings; they threatened plaintiffs' business if they did not get what they wanted, and they cited economic injury to others who had not complied with their demands. Specifically on February 27, 1983, they demanded that plaintiff purchase Unit 3C for $125,000 when they had bought it for $64,500 only eighteen months earlier. When plaintiff refused this demand, defendants continued the pattern and activities to cause fear of economic injuries to plaintiff.[2]

The district court dismissed the complaint. In an oral opinion from the bench, the court ruled:

[t]he plaintiff is suing the defendant. And if its allegations are true, it might have an approval claim, but it is at best a garden-variety commercial breach of contract, perhaps fraud, even perhaps conspiracy.

We note also that Financial Planning Center of Manassas, Inc., a Virginia corporation, is also joined as a defendant. Nowhere in the complaint, however, is it alleged to have played any part in the matters alleged. In the caption of the complaint, defendant Harry H. Horning is described as its "Registered Agent."

---

2. The complaint alleged the connection to interstate commerce requisite to sustain application of the Act. Plaintiff also alleged three other causes of action based upon state law that it requested the district court to adjudicate under the doctrine of pendent jurisdiction. For present purposes the details of these need not be spelled out.

But this isn't what RICO was designed to remedy. I agree, it doesn't have to be organized crime, but it seems to me it has to be some pattern of something that would be called racketeering or enterprise of some sort. This just doesn't meet that.

## II.

We think that plaintiff alleged extortion under Virginia law and a second series of acts constituting attempted extortion under Virginia law so that plaintiffs did allege a cause of action which is immune to a Rule 12 motion to dismiss. Defendants advance no argument that their alleged conduct after IBM took possession of the premises was not an attempt to extort under Virginia law. Indeed they concede the point. Hence we confine our subsequent discussion to defendants' alleged conduct after they contracted to exchange units and before IBM came into possession.

■ As we have shown, the Act authorizes a civil suit for treble damages and other recovery against any person who has engaged in a pattern of racketeering activity and that, for purposes of this case, a pattern of racketeering activity is established if defendants are alleged to be guilty of both extortion and attempted extortion. Under the Virginia statute, § 18.2–59, as it concerns us in this case, two elements must coalesce to constitute extortion: (1) a threat of injury to the property of another, and (2) by means of that threat, money, property or pecuniary benefits is extorted. When, as alleged, (a) defendants entered into a contract with plaintiff, knowing at the time that they did not intend to perform and knowing also that plaintiff would rely on their contract to expose itself to economic risk, (b) plaintiff in reliance on the contract with defendant entered into a commercial arrangement with another, and (c) defendants exacted monies, property and pecuniary benefits on the threat of causing plaintiff the economic harm which would stem from nonperformance of its other commercial arrangement, we think that extortion under Virginia law is al-

leged. *Cf. Bianchi v. United States*, 219 F.2d 182, 189–190 (8th Cir.1955) (threat of economic harm that would occur as result of strike adequate to establish threat against victim's property for purposes of extortion provisions of Hobbs Act, 18 U.S.C. § 1951); *United States v. Billups*, 692 F.2d 320, 330 (4 Cir.1982). Of course, we distinguish the allegations here from a situation where a defendant enters into a contract with plaintiff in good faith and thereafter, concluding by reason of changed market conditions or other causes that he could not perform, seeks a renegotiation of his contract obligations. Here, the allegation is in essence that defendants purposefully mislead plaintiff so as to extract additional benefits as the price for not causing plaintiff economic harm.

Defendants argue that their realization of greater economic benefit than that provided by the original contract is not extortionate because it was not wrongful. In short, they argue that they did no more than what they had a right to do, i.e., to drive a hard bargain. We reject this argument. This is not a case in which a party, recognizing the need of another for something that the party can provide, exacts a price in excess of what would otherwise be considered fair and reasonable. This is a case in which it is alleged that defendants entrapped plaintiff (defendants "knew at the time of entering into the contract that they ... had no intention [of performance]") and in reliance on defendants' false representations and their contract, plaintiff exposed itself to economic peril on which defendants seized for their own economic benefit.

Defendants also argue that their acts were not extortionate because the contract with plaintiffs was not in writing and hence was not enforceable so that they, not being bound, were free to exact a hard bargain. The short answer to this is that plaintiff alleges a contract. It is not alleged whether the contract is oral or written, and there is no obligation to make that allegation. On defendants' motion to dismiss, they cannot introduce new allegations or new facts.

They admit the fact pleaded by plaintiff that there is a contract. If the contract is oral and hence unenforceable and if this would render their actions not extortionate under Virginia law, those questions should be considered when they are raised properly by motion for summary judgment or at trial.

■ Defendant's last contention to sustain the district court's dismissal of the complaint requires little discussion. The argument is that the complaint does not allege that they were engaged in an "enterprise", as is required for violation of § 1962(c). That section only makes it unlawful for a person "employed by or associated with any enterprise ... to conduct or participate ... in the conduct of the enterprise's affairs through a pattern of racketeering activity ...." An "enterprise," in turn, is defined as including

> any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

18 U.S.C. § 1961(4).

With the possible exception of Financial Planning Center of Manassas, Inc., *see*, n. 2, *supra*, we think that the allegations that defendants were in a joint real estate venture and directed its business relations with plaintiff over a significant period of time alleged the existence of an "enterprise." On remand the district court can require that allegations be supplied to show how Financial Planning Center was a part of the enterprise or order its dismissal.

REVERSED AND REMANDED.