ROBERT SURIS GENERAL CONTRACTOR CORP.,
Plaintiff–Counter–Defendant–Appellant,

v.

NEW METROPOLITAN FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant–Counter–Plaintiff–Appellee,

Metropolitan Federal Savings & Loan Association, Tropical Federal Savings & Loan Association and Mario de la Cuevas, Defendants–Third-party Plaintiffs–Appellees,

Jose Luis Pujol, Defendant–Appellee,

Roberto Suris, Sr., Third-party Defendant–Appellee.

No. 88–5343.

United States Court of Appeals, Eleventh Circuit.

May 24, 1989.

Michael Zelman, Miami, Fla., for Robert Suris General Contractor Corp.

Gary Brookmyer, Broad & Cassel, Miami, Fla., for Tropical Federal Sav. & Loan Ass'n and Mario De Las Cuevas.

Theodore Klein, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., for Mario De La Cuevas.

Joe N. Unger, Law Offices of Joe N. Unger, P.A., R. Hugh Lumpkin, Keith, Mack, Lewis, Allison & Cohen, Miami, Fla., for New Metropolitan Federal Sav. & Loan Ass'n.

Gregory J. Borgognoni, Tew Jorden Schulte & Beasley, Miami, Fla., for Pujol.

Before KRAVITCH and HATCHETT, Circuit Judges, and MARKEY *, Chief Circuit Judge.

MARKEY, Chief Circuit Judge:

Robert Suris General Contractor Corp. (Suris) appeals from the United States District Court for the Southern District of Florida's (Scott, J.) (No. 87–0113–CIV) grant of summary judgment for defendants New Metropolitan Savings & Loan Association (New Metropolitan), Tropical Federal Savings & Loan Association (Tropical), Jose Luis Pujol (Pujol) and Mario de la Cuevas (Cuevas) [collectively defendants] on Suris' allegations of RICO, 18 U.S.C. § 1964(c), violations.[1] Suris also appeals the denial of motions to compel discovery of certain financial transactions. We affirm in all respects.

---

* Honorable Howard T. Markey, Chief U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The court also granted summary judgment for Suris on defendants' counter-claim and third party claims that Suris violated RICO. Having dismissed with prejudice all the RICO claims of the parties, the court found it lacked jurisdiction over Suris' pendent claims and dismissed them without prejudice. Defendants filed no cross-appeal and Suris does not challenge here the dismissal of his pendent claims.

## BACKGROUND

Suris asserts, as predicate acts required to support its RICO claims, that New Metropolitan, Tropical, Pujol, or Cuevas violated or conspired to violate 18 U.S.C. §§ 891–894 (the Extortionate Credit Transaction Act), 18 U.S.C. § 1951 (the Hobbs Act), or 18 U.S.C. § 1341 (the Mail Fraud Act). Suris' allegations arise out of its construction work on the Hidden Bay Project at Key Largo, Florida in the fall of 1985 and spring of 1986.

The statement of facts in Suris' brief begins with Superior Mortgage & Investment Inc.'s 1984 purchase of Hidden Bay Development, Inc. (Hidden Bay). Suris alleged that the purchase, financed by Metropolitan Federal Savings & Loan (predecessor of New Metropolitan) with Pujol as President, was a sham, Superior never actually having funds at Metropolitan and eventually accumulating a negative balance of nearly one million dollars. Suris also alleges that Hidden Bay had an account of a similar nature with Tropical.

Suris entered the picture in August of 1985 when Mr. Suris and his son (the sole owners and officers of Suris) signed a contract taking over general construction of the Hidden Bay Project. The contract provided that Suris was to be "paid by Hidden Bay for work on the project as the construction progressed."

Hidden Bay's difficulties in paying Suris for completed work led to two meetings and transactions out of which Suris draws its allegations of predicate acts needed to support its RICO claims. One meeting and transaction took place in September of 1985 (Metropolitan transaction), the other in January of 1986 (Tropical transaction). Referring to those events, the district court commented: "The circumstances of the meeting[s] and transactions generated are contested and constitute the inception of the tangled web of controversy among these litigants."

About the Metropolitan transaction, Mr. Suris says: he met in September of 1985 with Pujol to discuss payment by Hidden Bay to Suris for its work; at that meeting, Pujol agreed to extend Suris a $50,000 line of credit and said he was the owner of Hidden Bay and he and Metropolitan would stand behind it; Pujol told him he need not repay the $50,000 but "required him to sign his name on blank loan forms"; Pujol instructed Mr. Suris' son to sign his mother's name, Mirta Suris, on the blank forms; suffering a shortage of funds and "believ[ing] that if he did not take the money [he] would be ruined financially," Mr. Suris agreed to the transaction; Suris resumed work on the project, and soon began receiving Metropolitan bank statements reflecting $50,000 indebtedness and requesting repayment.

About the Tropical transaction, Mr. Suris says: needing additional funds to complete the project in January of 1986, he approached Pujol who told him no additional money was available, but that Suris could obtain $50,000 from Tropical on the same terms as the Metropolitan transaction, except that Suris would have to pay about $25,000 to subcontractors; he accepted those terms because he feared financial ruin and "that the defendants would commit perjury to collect upon the signed blank Metropolitan documents or the Tropical transaction itself"; he received a Tropical check for $49,875.80 and paid $22,854.63 to subcontractors; he never signed anything to obtain the money; soon after completing its work on the Hidden Bay Project, Suris began receiving requests from Tropical for repayment; his signature on the promissory note in Tropical's "loan" file was a forgery.

### The District Court's Opinion

After reviewing the accusations and evidence submitted by the parties, Judge Scott granted defendants' motions for summary judgment, stating that Suris presented no evidence "of a scheme that rises to the level contemplated by the [RICO] statute and the United States Supreme Court in *Sedima, S.P.L.R. v. Imrex Co.,* [473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)] and its progeny." Carefully analyzing each of the predicate acts required for RICO liability, Judge Scott concluded that Suris failed to state a claim, that no genu-

ine issue of material fact existed on Suris' RICO claims, and that defendants were entitled to judgment as a matter of law.

Citing *United States v. Pacione*, 738 F.2d 567 (2d Cir.1984), the court adjudged Suris' claim of extortion by threatened perjury insufficient in fact and law, the record being "devoid" of any indication that any defendant threatened to commit perjury or physical harm, and a threat of perjury being in any event insufficient to satisfy the "other criminal means" language of the Extortionate Credit Transaction Act, 18 U.S.C. § 891(7).[2]

The court rejected the charge that defendants violated the Hobbs Act because Suris' own evidence showed each transaction was directed to payment to Suris for already completed work. Thus Suris' alleged fear of loss was indistinguishable from that which accompanies any party to a contract and could not be construed as in any way inducing Suris to part with property.

Finally, the court rejected Suris' allegation of Mail Fraud because Suris presented "no evidence that [the bank statements] were sent other than in the ordinary course of business" and because Suris "failed to prove that any communication whatsoever took place between the Defendants, and if so, that these communications rose to the level of a 'scheme' necessary under the statute."

No genuine dispute of material fact relating to any predicate act having been shown, the court found that Suris could not establish the required pattern of racketeering activity and therefore granted defendants' motion for summary judgment.[3] In

the court's words, "Plaintiff has taken a simple breach of contract or garden-variety fraud claim and attempted to boot-strap it into a 'federal case' by couching the allegations in [RICO] statutory language. This is not the purpose for which RICO was enacted."

### ISSUES

I. Whether the district court erred in granting summary judgment.[4]

II. Whether the district court abused its discretion in denying Suris' motions to compel discovery.

### OPINION

#### I. Summary Judgment[5]

Suris' brief characterizes the issue as whether reasonable inferences from undisputed evidence created an issue of fact. *See, e.g., Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1176 (11th Cir.1985). We disagree. Our study of the record, the district court's opinion, and Suris' arguments convinces us that the issue is not whether there are disputes but whether any dispute raises or turns on an issue of fact that is material. Though disputes may exist on the permissable inferences to be drawn from undisputed facts, there is no genuine dispute here about *material* facts or inferences. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

---

**2.** Section 891(7) defines "extortionate means" as used in section 894(a) and reads:

> An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person.

**3.** The court also found that Suris had failed to show the existence of an enterprise, another fatal flaw in its RICO claims. Suris points to evidence showing, in its view, a genuine dispute on that issue. We need not and do not discuss the issue because we affirm on the absence of a pattern of racketeering activity.

**4.** We emphasize, as did the district court, that only Suris' RICO claims are involved here. Nothing here said should be taken as deciding any other claim that Suris may be entitled to make.

**5.** In reviewing a grant of summary judgment we independently review the record, *Tackitt v. Prudential Insurance Co.*, 758 F.2d 1572, 1574 (11th Cir.1985), and apply the same legal standards (movant bears the burden of demonstrating absence of genuine dispute of material fact; all reasonable inferences drawn in favor of nonmovant). *See Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368 (11th Cir.1982).

Because neither the facts nor reasonable inferences drawn from those facts would support the existence of any of the predicate acts Suris alleges,[6] no RICO liability may lie, and summary judgment for defendants was proper. *See United States v. Weinstein,* 762 F.2d 1522, 1536–37 (11th Cir.), *modified,* 778 F.2d 673 (1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986) (to state claim under RICO plaintiff must prove defendant committed at least two predicate acts constituting pattern of racketeering activity).

### A. Extortionate Credit Transaction Act

■ Suris does not contend that defendants committed or threatened to commit perjury to enforce the Metropolitan and Tropical transaction notes. Rather, Suris contends that an implied threat of perjury could be inferred from Mr. Suris' testimony (that he feared perjury and that Pujol had Suris Sr. and his son sign the Metropolitan note in blank) and other evidence (including loan documentation). We agree with the district court that such testimonial and documentary evidence, accepted and given the benefit of all reasonable inferences, shows at most contractual facts that cannot be reasonably construed as a threat of perjury. Suris' "extortion" assertion rests on a dual speculation (that defendants would sue on the notes and would then commit perjury in court).[7]

Suris' reliance on *United States v. Roberts,* 546 F.2d 596 (5th Cir.), *cert. denied sub nom. Mancini v. United States,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977), binding precedent in this circuit, is of no avail. That case construed the "any loan" or "any debt" language of 18 U.S.C. § 891(1) (defining "extension of credit" as used in § 894(a)), not the "other criminal means" language of section 891(7) (defining "extortionate means" of § 894(a)) at issue here. Equally meritless is Suris' further argument that the conduct here alleged, creation of loan documents, is more serious than filing a real document containing false information, the conduct in *Pacione.* Because neither the conduct here alleged nor that in *Pacione* involved anything akin to violent collection means, neither falls within the ambit of the Extortionate Credit Transaction Act.

### B. The Hobbs Act

■ Suris challenges the rejection of its Hobbs Act claim only by arguing that its evidence is the same as that present in *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060 (4th Cir.1984). Suris' attempted comparison fails because fear of economic loss in *Battlefield* was separate and distinct from performance on the contract; here the fear was correctly described by the district court as: "The only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming." *Cf. United States v. Sander,* 615 F.2d 215, 219 (5th Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980).

Our review of the record as a whole leads us to agreement with the district court's view that Suris failed to create a genuine issue of material fact on its allegation that defendants violated the Hobbs Act.

### C. Mail Fraud Act

■ As recently stated by the Supreme Court in *Schmuck v. United States,* —— U.S. ——, ——, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734 (1989):

> "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is part of the execution of the fraud, leaving all other cases to be dealt with by state law." *Kann v. United States,* 323 U.S. 88, 95 [65 S.Ct. 148,

---

**6.** Suris did not allege that the asserted forgery of Mr. Suris' signature constituted in itself a predicate act.

**7.** In its Reply brief, responding to appellee's argument respecting the Hobbs Act, Suris said "Defendants incorrectly state that RSGC [Suris] claimed it feared economic loss from suit based upon the false and forged notes. RSGC [Suris] never made such claim." (Citations to the record omitted.)

151, 89 L.Ed. 88] (1944). To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme. *Pereira v. United States,* 347 U.S. 1, 8 [74 S.Ct. 358, 362, 98 L.Ed. 435] (1954). It is sufficient for the mailing to be "incident to an essential part of the scheme," *ibid.,* or a step in [the] plot," *Badders v. United States,* 240 U.S. 391, 394 [36 S.Ct. 367, 368, 60 L.Ed. 706] (1916). [Footnote omitted]. "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time...." *Id.* at ——, 109 S.Ct. at 1449.

The district court correctly found here that mailing collection statements to Suris could not support mail fraud charges.[8] In this case there is no evidence or reasonable inference from evidence that the mailings were in any way incident to or part of the execution of some particular nefarious scheme. Suris nowhere describes the goal of any such scheme. Presumably, the scheme Suris would ascribe to the defendants had the goal of obtaining work on the Hidden Bay Project. Any such scheme, however, would have reached fruition when Suris completed work on the project segments which occurred before the mailings. *Compare United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (no mail fraud despite foreseeable sending of bills to credit card owner because fraudulent scheme complete when user of stolen credit card received object of the fraud) *with Schmuck,* —— U.S. at ——–——, 109 S.Ct. at 1446-50 (later mailings essential to continuation of the fraud).

### II.  Denied Discovery

■ Suris complains that Judge Scott abused his discretion in denying its motion to compel production of documents that would show "true ownership and control of Hidden Bay, the nature of the conspiratorial enterprise, and the motive for racketeering acts yet to come." If there were an abuse in denying discovery of enterprise and motive, it became clearly harmless when Suris failed to show predicate acts forming a pattern of racketeering activity. Enterprise and motive without predicate acts do not a RICO violation make.

### CONCLUSION

The district court's grant of summary judgment for defendants on Suris' RICO claims is affirmed.

AFFIRMED.

---

**8.** Despite the apparent logic of its reasoning, we cannot agree with the district court that summary judgment was appropriate here because "there is simply no evidence that these documents were sent other than in the ordinary course of business." As the Supreme Court made clear in *Schmuck:* "To the extent [appellant] would draw from ... previous cases a general rule that routine mailings that are inno-

cent in themselves cannot supply the mailing element of the mail fraud offense, he misapprehends this Court's precedent." *Id.*

The grant of summary judgment in this case, however, can be and is affirmed here on other grounds. *See Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Railway Labor Executives' Ass'n v. Southern Ry. Co.,* 860 F.2d 1038, 1040 n. 2. (11th Cir.1988).