RICHMARK CORPORATION, a
California corporation,
Plaintiff,

v.

TIMBER FALLING CONSULTANTS,
INC., an Oregon corporation,
Defendant.

TIMBER FALLING CONSULTANTS,
INC., an Oregon corporation,
Counterclaim Plaintiff,

v.

RICHMARK CORPORATION, a California corporation; Peacock Manufacturing Company, Inc., a Texas corporation; Beijing Ever Bright Ind. Co., a foreign corporation; Zhu Yuanchang; Eugene Wang; James Yang; and Francis Tong, Counterclaim Defendants.

TIMBER FALLING CONSULTANTS,
INC., an Oregon corporation,
Plaintiff,

v.

GENERAL BANK, a California
corporation, Defendant.

Civ. Nos. 88–1203–FR, 89–181–FR.

United States District Court,
D. Oregon.

Feb. 15, 1990.

Thomas V. Dulcich and Kurt F. Hansen, Schwabe, Williamson & Wyatt, Portland, Or., for Richmark Corp.

John F. Neupert, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for Timber Falling Consultants, Inc.

## OPINION

FRYE, District Judge:

The matters before the court are:

1) the Rule 12 motions of plaintiff and counterclaim defendant, Richmark Corporation (Richmark) (# 164); and

2) the Rule 12 motions of counterclaim defendants Eugene Wang, James Yang, and Francis Tong (# 166).

## BACKGROUND

The court has considered numerous motions in this lawsuit. Therefore, to avoid duplication, this opinion will set out only the facts pertinent to the pending motions. Richmark initiated this action by filing a complaint against defendant, Timber Fall-ing Consultants, Inc. (TFC) for breach of a contract for six shipments of logs. TFC filed counterclaims for breach of contract, civil conspiracy, fraud, tortious interference with business and RICO violations against Richmark, Eugene Wang, James Yang, Francis Tong, Peacock Manufacturing Company, Inc. (Peacock), Beijing Ever Bright Ind. Co. (Ever Bright), and Zhu Yuanchang.

TFC is an Oregon corporation and Richmark is a California corporation. Wang, the president of Richmark, is a citizen of the United States. Tong, the vice president and manager of relations with China for Richmark, is a citizen of the People's Republic of China and a resident alien of the United States. Yang, the vice president of Richmark, is a citizen of Taiwan and a resident alien of the United States.[1]

In July, 1989, the court issued an order dismissing some of TFC's counterclaims with leave to amend, and dismissing Peacock from the action for lack of personal jurisdiction. TFC filed its Second Amended Answer and Counterclaims on August 1, 1989. Richmark, Wang, Yang and Tong now move against this pleading pursuant to Fed.R.Civ.P. 12.

## CONTENTIONS OF THE PARTIES

Richmark moves first to strike all references in the Second Amended Answer and Counterclaims to Peacock Manufacturing Company, Inc. Richmark argues that since this court dismissed Peacock from the action for lack of personal jurisdiction, it is improper to name Peacock as a party in the Second Amended Answer and Counterclaims and to include allegations regarding Peacock. TFC responds that it is not reasserting claims against Peacock in the Second Amended Answer and Counterclaims.

Richmark then moves to dismiss with prejudice the eighth, ninth, tenth and eleventh counterclaims, which allege claims under federal and Oregon RICO statutes. Richmark contends that the amendments to these claims do not cure the deficiencies which led the court to dismiss these claims

1. A related action, *Timber Falling Consultants, Inc. v. General Bank,* Civil No. 89–181–FR, has been consolidated with this action for purposes of discovery.

for failure to allege predicate acts with sufficient particularity and to adequately allege a pattern of racketeering activity. Richmark argues that even if the allegations are now sufficiently particular, the RICO claims must be dismissed for several reasons which were raised in the earlier motions to dismiss and which the court did not reach at that time.

TFC responds that the Second Amended Answer and Counterclaims has cured any deficiencies in the RICO claims, and that the allegations include numerous predicate acts which form a pattern of racketeering activity. TFC asks that it be given leave to amend again if the court dismisses the RICO claims for any of the reasons which were raised in the earlier motions but not addressed in the court's opinion of July 13, 1989.

Wang, Yang and Tong join in the motion to strike and the motion to dismiss the RICO claims. Wang, Yang and Tong also move to dismiss with prejudice the sixth counterclaim for tortious interference on the grounds that the Second Amended Answer and Counterclaims does not adequately allege that Wang, Yang or Tong had a personal interest in Richmark's breach of its contract with TFC which was adverse to the interests of Richmark. TFC responds that the allegations are sufficient to state a claim for tortious interference against Wang, Yang and Tong.

## ANALYSIS AND RULING

### 1. *Motion to Strike*

�no Richmark, Wang, Yang and Tong move to strike all references to Peacock in the Second Amended Answer and Counterclaims. They argue, without citing any authority, that since this court dismissed Peacock from the action for lack of personal jurisdiction, all references to Peacock must be stricken from this pleading. This position is incorrect, however. Federal pleading practice does not prevent references to a non-party in a complaint where the references provide background or otherwise explain or clarify the allegations of the complaint. Wright and Miller, *Federal Practice & Procedure*, § 1382 at 813–14.

Although Peacock's name remains in the caption of TFC's counterclaims, it is not necessary to require that a new pleading be filed which deletes Peacock's name from the caption. Therefore, the motion to strike of Richmark, Wang, Yang and Tong is denied.

### 2. *Motion to Dismiss RICO Claims*

#### A. Particularity

In the earlier motions to dismiss, Richmark, Wang, Yang and Tong raised a number of grounds for dismissal of TFC's federal and state RICO claims. In the opinion of July 19, 1989, 1989 WL 81622, the court held:

> As TFC has failed to allege any predicate acts with sufficient particularity, the court finds that TFC has not adequately alleged a pattern of racketeering activity. The Ninth Circuit has indicated that it may be an abuse of discretion to deny a RICO claimant an opportunity to cure defects in the pleading. *Schreiber Distrib.* [*v. Serv-Well Furniture Co.*], *supra*, 806 F.2d [1393] at 1401. Therefore, TFC's eighth, ninth, tenth and eleventh counterclaims will be dismissed with leave to amend. The court does not reach the issues of whether TFC has adequately alleged that the counterclaim defendants were employed by or associated with an enterprise, or that they participated in the conduct of the enterprise.

*Id.* at 27.

The court faulted TFC for failing 1) to state the content and other details about alleged wire transmissions; 2) to allege specific details regarding the alleged attempt to extort a kickback; 3) to allege specific details regarding the alleged attempt to extort contract concessions; and 4) to specify the role of each defendant where more than one defendant is implicated in a predicate act.

In the Amended Answer and Counterclaims, TFC's allegations regarding predicate offenses were found in paragraphs 70 and 71. The corresponding paragraphs in the Second Amended Answer and Counterclaims are paragraphs 69 and 70. TFC has

amended paragraph 69 to include the allegation that the pattern of racketeering activity involved the use of the mail and interstate wires to commit fraud. TFC has added significant detail to the allegations in paragraph 70.

As to the alleged wire transmissions, subparts a.3, b.1 and h. of paragraph 70 now contain specific details regarding the date, content and participants in various interstate wire transmissions. TFC has added specific allegations regarding use of the mails in subparts a.1, a.2 and g. of paragraph 70. Subparts b.1, b.2 and b.3 contain details regarding the alleged attempt to extort a kickback, and subparts e.1, e.2, e.3, e.4 and e.5 contain details regarding the alleged attempt to extort contract concessions. In addition, TFC has amended paragraph 70 to specify the defendant or defendants who allegedly committed each predicate act and the role of each defendant in such acts.

The court concludes that TFC has alleged the facts which form the basis of its RICO allegations with sufficient particularity in the Second Amended Answer and Counterclaims. The court must now consider whether these facts constitute predicate acts under RICO.

### B.  Predicate Acts

TFC contends that it has alleged one or more violations of each of the following statutes: 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1503 (attempted obstruction of justice); 18 U.S.C. § 1951 (attempted extortion); 18 U.S.C. § 1952 (interstate or foreign travel with intent to promote, manage, establish, carry on or facilitate attempted extortion); O.R.S. 162.265 (bribery of a witness); and O.R.S. 162.285 (tampering with a witness). Each of these statutes qualifies as a racketeering activity under both RICO, 18 U.S.C. § 1961(1), and ORICO, O.R.S. 166.715(6).

Richmark, Wang, Yang and Tong do not challenge the adequacy of the allegations of wire fraud and mail fraud in this motion. They contend that TFC has not adequately alleged the crimes of extortion, bribery of a

witness, tampering with a witness, or obstruction of justice.

TFC's claims of extortion are based on 18 U.S.C. § 1951(a), which provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

Under section 1951(b)(2), the term extortion "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

■ Richmark, Wang, Yang and Tong argue that TFC's allegations are insufficient to establish the crime of attempted extortion under section 1951. The operative allegations with respect to the claim that Wang, Yang and Tong attempted to extort a kickback are found in paragraph 70.b.1 of the Second Amended Answer and Counterclaims:

Wang conducted himself in such a manner that it was implied that payment of the kickback was a condition to Richmark's performance under the contract. As a consequence of Wang's instructions and conduct, TFC developed a concern as to whether it would receive the benefit of its contract unless it paid the kickback.

*Id.* at 21.

The operative allegations with respect to the claim that Wang, Yang, Tong and Zhu Yuanchang attempted to extort contract concessions from TFC are found in paragraph 70.e:

e.4  Wang, Yang, and Zhu demanded that TFC give price concessions and change the mixture and grade of logs to a typical "Chinese sort" or better. Zhu threatened to "tear up" the contract between TFC and Richmark unless TFC agreed to change the contract. Wang,

Yang, and Tong, who was also present, endorsed or ratified Zhu's position.

e.5 At the time of this conduct, Wang, Yang, Zhu, and Tong knew or expected that TFC faced financial ruin if the contract was canceled and payment was not made. TFC reasonably feared economic loss if it did not capitulate to the demand, but it refused to be coerced.

*Id.* at 22–23.

Richmark, Wang, Yang and Tong contend that these allegations do not establish the sort of fear which is a necessary element of extortion. The court has not been able to locate any decision of the Ninth Circuit which decides this issue under similar circumstances.

Richmark, Wang, Yang and Tong rely on the decision of the Eleventh Circuit in *Robert Suris Gen. Contractor Corp. v. New Metropolitan Fed. Sav. & Loan Ass'n*, 873 F.2d 1401 (11th Cir.1989). In *Suris*, the plaintiff, a construction company, entered into a contract to take over construction of the Hidden Bay Project. The Hidden Bay Project experienced difficulties in paying Suris for its work, which caused Suris financial problems in completing the construction. The defendants, who were connected to the Hidden Bay Project, pressured Suris into taking loans from them, and then threatened to cause Suris financial ruin by collecting on the loans.

The court granted summary judgment against Suris' RICO claims, holding that Suris' alleged fear of economic loss was indistinguishable from that fear of economic loss which accompanies any party to a contract when it suspects that compliance and compensation may not be forthcoming. 873 F.2d at 1405. The court found that Suris had failed to create a genuine issue of material fact on its allegation that the defendants violated 18 U.S.C. § 1951. *Id.*

TFC relies on the decision of the Fourth Circuit in *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir.1984), in which the court ruled that allegations similar to those in this case were sufficient to allege the predicate offense of extortion. In *Battlefield*, the defendants bought an office condominium unit in a building devel-oped by Battlefield. Battlefield later had the opportunity to lease a large block of units in the building to IBM, but only if the defendants' unit was included in the block. Knowing that the IBM deal depended on their unit, the defendants agreed to sell their unit back to Battlefield.

Battlefield alleged that from the outset the defendants did not intend to go through with the contract, but schemed to get Battlefield in a position of financial risk, so that they could extort more money and other concessions from Battlefield when the time came to perform. The Fourth Circuit, in holding that these allegations were adequate to state the predicate offense of extortion, distinguished these facts from the situation where a defendant enters into a contract with the plaintiff in good faith and thereafter seeks to renegotiate its obligations under the contract. 743 F.2d at 1063. The court found it significant that the defendants allegedly misled Battlefield into a position of economic risk so that they could extract additional benefits as their price for not causing economic harm to Battlefield. *Id.*

Both procedurally and factually, this case is more similar to *Battlefield* than to *Suris*. TFC alleges that Richmark, acting through Wang, Yang and Tong, induced TFC to enter into a contract containing terms to which Richmark did not intend to adhere. TFC alleges that after it had financially extended itself to comply with the contract, Wang, acting on Tong's orders and with the approval of Yang, Yuanchang, and Ever Bright, instructed TFC to pay a kickback into Tong's personal bank account, and implied that Richmark would not perform unless TFC paid the kickback.

As a second instance of extortion, TFC alleges that in July, 1988, Wang, Yang and Yuanchang threatened to "tear up" the contract unless TFC made various contract concessions. TFC alleges that Wang, Yang, Yuanchang and Tong knew that TFC faced financial ruin if the contract was canceled and payment was not made. TFC alleges that it reasonably feared economic loss if it did not capitulate to the demand.

Although the allegations regarding TFC's fear could be stated more strongly, the allegations, when viewed in the light most favorable to the pleader, are adequate to allege the predicate act of extortion. This is the standard which the court must apply when ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *H.J. Inc. v. Northwestern Bell Tel. Co.*, —— U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989). The court may dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

As in the *Battlefield* case, TFC has alleged a situation in which the counterclaim defendants lured TFC into a position of financial risk by means of misrepresentations in order to extract additional benefits. At this stage of the proceedings, the court cannot address the merits of these allegations but finds only that TFC has adequately alleged two instances of attempted extortion.

The result with respect to the attempted extortion claims also dictates the result as to TFC's allegations that Wang and Yuanchang violated 18 U.S.C. § 1952 by means of their interstate or international travel in order to extort the kickback and to extort the contract concessions. The allegations are sufficient to support the inference that Wang and Yuanchang engaged in such travel with the intent to commit extortion.

■ Richmark, Wang, Yang and Tong contend that TFC's allegations are insufficient to establish the charge of attempted witness tampering under O.R.S. 162.265 and O.R.S. 162.285. O.R.S. 162.265 provides in relevant part:

(1) A person commits the crime of bribing a witness if the person offers, confers or agrees to confer any pecuniary benefit upon a witness in any official proceeding, or a person the person believes may be called as a witness, with the intent that:

(a) The testimony of the person as a witness will thereby be influenced.

O.R.S. 162.285 provides in relevant part:

(1) A person commits the crime of tampering with a witness if:

(a) The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony.

The operative allegations with respect to the claim that Wang attempted to bribe or tamper with a witness are found in paragraph 70.h of the Second Amended Answer and Counterclaims:

Attempt by Wang through the use of interstate wire transmissions on or about August 2, 1988, when litigation was contemplated, to induce Jerry Coon, an agent of Richmark, to offer false testimony in exchange for payments amounting to over $20,000, an offense chargeable under ORS 162.265 or ORS 162.285 and punishable by imprisonment for over one year. Wang called Coon from California and, knowing that Coon believed Richmark was in breach of contract, offered Coon years of future business and up to $20,000 per vessel of logs if Coon would "stick with him," meaning if Coon would testify favorably for Richmark in anticipated litigation with TFC.

*Id.* at 23.

These allegations meet the requirements of O.R.S. 162.265 and O.R.S. 162.285 because they can reasonably be interpreted to mean that Wang believed that Coon would be called as a witness in litigation between Richmark and TFC and that Wang offered to confer a pecuniary benefit upon Coon in order to influence his testimony.

■ Richmark, Wang, Yang and Tong contend that TFC's allegations are insufficient to establish the crime of attempted obstruction of justice under 18 U.S.C. § 1503. Section 1503 states:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit

juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The operative allegations with respect to the claim that Wang attempted to obstruct justice are found in paragraph 70.i of the Second Amended Answer and Counterclaims:

An attempt to obstruct or impede, or the actual obstruction or impeding of due administration of justice by Wang, with corrupt intent, when Wang concealed and withheld from production in this action documents which should have been produced at or prior to the deposition of Wang in January 1989. The documents wrongly withheld or concealed include a file entitled "Bejing Ever Bright Contract Amend."

*Id.* at 23–24.

The parties have not cited and the court has not found any case in which a person was charged with obstruction of justice for concealing or withholding discovery in a civil case. A violation of 18 U.S.C. § 1503 has been found where the defendant concealed documents from a grand jury in a criminal case. *United States v. Rasheed,* 663 F.2d 843 (9th Cir.1981). A few cases have found a violation of section 1503 in a civil case. *See United States v. London,* 714 F.2d 1558 (11th Cir.1983) (attorney forged court order and attempted to enforce it); *Sneed v. United States,* 298 F. 911 (5th Cir.), *cert. denied,* 265 U.S. 590, 44 S.Ct. 635, 68 L.Ed. 1195 (1924) (influencing juror in civil case).

However, section 1503 has not been interpreted to apply to a civil discovery dispute where there has been no court order or subpoena requiring the production of documents. In light of the extensive framework of rules and remedies provided for the resolution of civil discovery disputes, the court declines to stretch the definition of obstruction of justice to include the concealment or withholding of discovery documents as alleged by TFC.

Accordingly, the court finds that TFC has adequately alleged all of its predicate offenses, except for the predicate offense of obstruction of justice under 18 U.S.C. § 1503.

## C. Pattern of Racketeering Activity

Richmark, Wang, Yang and Tong contend that TFC has not adequately alleged a pattern of racketeering activity. In order to state a claim under RICO or ORICO, a party must allege a "pattern of racketeering activity" which consists of at least two acts of racketeering activity within a period of ten years. 18 U.S.C. § 1961(5). The Supreme Court recently held that in order to prove a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co., supra,* 109 S.Ct. at 2900 (emphasis in original).

In *H.J. Inc.,* the court held that criminal conduct is sufficiently related if it "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 109 S.Ct. at 2901. The court held that continuity may be found where the allegations show a series of related predicates extending over a substantial period of time, or where a smaller number of predicates occur in a short period of time, but there is

a specific threat of repetition extending indefinitely into the future. *Id.* at 2902.

■ A plaintiff need not allege more than one "scheme," but the predicate acts must extend over a period of more than a few weeks or months unless there is a threat of future criminal conduct. *Id.* at 2901–02. In *H.J. Inc.,* the court found that the complaint met the continuity requirement where the plaintiffs alleged that over a six-year period the defendants gave numerous bribes to five members of the Minnesota Public Utilities Commission. *Id.* at 2906.

■ In this case, TFC alleges that over the seven-month period from February through August, 1988, the counterclaim defendants committed at least eight, and as many as eighteen, predicate acts.[2] These allegations fulfill the requirement that the predicate acts be related, as all of the acts are alleged to be for the same purpose and with the same victim.

As to the continuity requirement, TFC does not allege that there was a specific threat of future criminal conduct after August, 1988. Although TFC argues in its memorandum that solicitation of kickbacks is a regular way of doing business for the counterclaim defendants, TFC does not include this allegation in the counterclaims. Therefore, TFC has alleged a pattern of racketeering activity only if a period of seven months is a substantial period of time under *H.J. Inc.*

■ The court in *H.J. Inc.* did not specify what would constitute the minimum period for a pattern of racketeering activity, but stated that predicate acts extending over a few weeks or months would not meet the continuity requirement. The Ninth Circuit has not addressed this question since the decision in *H.J. Inc.* Whether seven months is more than "a few" months under the facts and circumstances of this case is a question of fact for the jury. The court finds that TFC has adequately alleged a pattern of racketeering activity.

### D. Enterprise

■ Richmark, Yang, Wang and Tong contend that the allegations of the Second Amended Answer and Counterclaims are insufficient to establish the necessary employment relationship or association between Richmark and Ever Bright, which is alleged to be the racketeering "enterprise" in counts nine and eleven. Richmark, Yang, Wang and Tong do not dispute that the element of employment or association is adequately alleged in counts eight and ten, in which Richmark is the alleged racketeering enterprise.

In paragraphs 75 and 76 of the Second Amended Answer and Counterclaims, TFC makes the conclusory allegations that at all relevant times Ever Bright was an enterprise that engaged in interstate or foreign commerce or whose activities affected such commerce, and that Wang, Yang, Tong, Peacock, Richmark and Yuanchang were employed by or associated with Ever Bright and conducted or participated directly or indirectly in the conduct of Ever Bright's affairs through a pattern of racketeering activity.

TFC also alleges that at all relevant times Richmark and Ever Bright have been engaged in a joint venture and common enterprise (paragraph 42); that Richmark was an authorized agent for Ever Bright (paragraph 45); and that all of the counterclaim defendants joined in a conspiracy to defraud TFC (paragraph 49).

Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The term " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

2. The allegations are subject to varying interpre- tations as to the exact number of acts alleged.

In *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 195 (9th Cir.1987), the Ninth Circuit held that "the essence of a violation of section 1962(c) 'is the commission of those acts [of racketeering] *in connection with* the conduct of an enterprise'" (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985) (emphasis in *Sun Savings* opinion). The Ninth Circuit went on to state: "Under this 'connection' or 'nexus' requirement, the racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise." 825 F.2d at 195.

The *Sun Savings* court adopted the rule enunciated by the Second Circuit in *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), that a nexus exists "when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." 825 F.2d at 195.

In this case, TFC does not clearly allege that Richmark was enabled to commit the predicate offenses solely by virtue of its position in Ever Bright or its involvement in or control over the affairs of Ever Bright. However, TFC's allegations that Richmark and Ever Bright were engaged in a joint venture, that Richmark was the agent of Ever Bright, and that Richmark and the other counterclaim defendants were engaged in a conspiracy to commit the predicate acts with Ever Bright are adequate to establish that the predicate offenses were related to the activities of Ever Bright as an enterprise.

Therefore, TFC has adequately alleged a nexus between Richmark and Ever Bright in the ninth and eleventh counterclaims.

3. *Motion to Dismiss Claim for Tortious Interference*

■ In its earlier decision, the court dismissed TFC's claim for tortious interference on the grounds that TFC did not allege that Wang, Yang or Tong had a personal interest in Richmark's breach of its contract with TFC which was adverse to the interests of Richmark. The court granted leave to amend, and TFC added the following allegations in the Second Amended Answer and Counterclaims: "In so acting, Wang, Yang, and Tong were seeking retribution against TFC. A corporate officer acting out of a motive of retribution is acting in his personal interest and adverse to those of Richmark." *Id.* at p. 17, para. 59.

Wang, Yang and Tong contend that these allegations are too unsupported and conclusory to establish the necessary element of a personal interest of Wang, Yang and Tong that is adverse to the interests of Richmark. Wang, Yang and Tong argue that a corporate officer may seek retribution without acting out of a personal motive or acting against the interests of the corporation.

When ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must view the allegations in the light most favorable to the pleader. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). The court should dismiss a claim only when it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

Although the allegations added to the claim for tortious interference are not a model of precision, they can be interpreted to allege that Wang, Yang and Tong were acting out of personal motives of retribution which were adverse to the interests of Richmark. This falls within the standards set out by the Oregon Supreme Court in *Welch v. Bancorp Management Advisors Inc.*, 296 Or. 208, 215–16, 675 P.2d 172 (1983). Therefore, the sixth claim states a claim for tortious interference under the law of the State of Oregon, and the motion to dismiss the sixth claim is denied.

## CONCLUSION

The Rule 12 motions of Richmark (#164) are denied. The Rule 12 motions of Wang, Yang and Tong (#166) are denied.