TORPY, J.,
dissenting.
When the smoke cleared here, United got the product it contracted for but avoided payment by its creative assertion of the Hobbs Act as a defense to payment. A federal investigator authorized United’s employees to play along with the purported extortionate demand while under audio surveillance. After the threat had been documented in a tape recording, United waited until the cutters were shipped before terminating the contracts and refusing even to pay for delivered and accepted product. Most troublesome to me is United’s contention that Hi-Shear placed it in “fear,” despite United’s superior size and economic strength and despite the fact that it did not succumb to the threat but instead reported it to authorities. United successfully presented testimony that Hi-Shear’s threats of non-performance caused it fear of great economic loss because the product was integral to the space shuttle and unavailable from other sources. Because I believe threatened non-performance of a contract is not the type of threat that Congress intended to criminalize under the Hobbs Act, I would reverse.
As defined in the Hobbs Act, “extortion” means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. Here, there were no threats of force or violence, leaving only the issue of whether Hi-Shear wrongfully put United in fear in an attempt to obtain the bonnet thruster contract.[1] The “obtaining property” element is entirely distinct from the “putting in fear” element. The former focuses on what the violator got or tried to get. The latter focuses on what the victim feared it would lose if it did not succumb to the demand. By awarding a sole-source contract to Hi-Shear for specially fabricated goods, United assumed the contractual risk that Hi-Shear would not perform and its non-performance would delay the project. The threatened breach, even when used as leverage to exact additional consideration, did not exacerbate this contractual risk. Therefore, it was not the type of threat that gives rise to a Hobbs Act violation, as is illustrated by Robert Suris General Contractor Corp. v. New Metropolitan Federal Savings & Loan Ass’n, 873 F.2d 1401, 1405 (11th Cir.1989). There, the plaintiff, a contractor, was induced to accept loans from affiliates of the project’s owner based upon fear of non-payment for work done on the project. In affirming the grant of summary judgment for the defendants, the court held that the plaintiff *205 had not established a Hobbs Act claim because: “The only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming.” Id.
In my view, this case is analogous to a construction contract scenario wherein a subcontractor threatens non-performance to leverage an additive change order or a contractor threatens non-payment to coerce a subcontractor to perform extra work. To label this type of hardball tactic between businesses criminal extortion stretches the law dangerously beyond what Congress intended. See United States v. Albertson, 971 F.Supp. 837, 841 (D.Del.1997) (principal purpose of Hobbs Act was to outlaw “gangland thuggery and its influence within labor unions”).
I would reverse.

. I say "put in fear” because one cannot "use” fear. Fear is a reaction. This is apparently the way the courts have construed this language.