In re COIN PHONES, INC., Debtor.

Barbara BALABER–STRAUSS, Trustee
of Coin Phones, Inc., Plaintiff,

v.

AMERICAN TELTRONICS, INC., T.G.I.
Leasing, Inc., Thurston Group, Inc.,
Richard J. Coghlan, Patrick J. Haynes
III, and Russell Thurston Stern, Defendants.

Bankruptcy No. 89 B 20451.
Adv. No. 92–5332A.

United States Bankruptcy Court,
S.D. New York.

Dec. 23, 1992.

**392**

Kazlow & Kazlow, New York City, for Trustee.

Rivkin, Radler & Kremer, Uniondale, NY, for defendants.

## DECISION ON MOTION TO DISMISS CLAIMS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Counsel for the Chapter 7 trustee in this aborted Chapter 11 case filed a 48–page anthology which might be entitled "Promises, Promises and the Unrealized Merger" or "The White Knight had Dirty Hands," or perhaps, "RICO and the Firm." Instead, trustee's counsel called it a complaint. In the first 26 pages of this unhappy saga, counsel for the trustee relates the history of the debtor's business as the operator of coin telephones caught in a cash crunch only to be offered salvation by the defendants as White Knights who charged to the rescue by offering an infusion of cash and a management contract as a preliminary to a merger. The proposed merger ultimately collapsed when the defendants learned that New York Telephone Co. had asserted a 3 to 6 million dollar claim against the debtor for unpaid leases of telephone lines. Starting from page 26, the anthology seeks to recover from the White Knights for fraudulent conveyances, preferences, fraudulent misrepresentations, conversion, breach of contract, breach of fiduciary duty, and also RICO violations. These violations are alleged to have occurred before and while the defendants were operating under a management contract with the debtor in possession, during which time they allegedly failed to account for the debtor's inventory, submitted false invoices and chargebacks and converted the debtor's assets, some of which activities involved the use of the mail and the telephone, thereby resulting in the RICO charges.

The defendants have moved pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6) and 12(c), incorporated by reference in Rules 7009(b) and 7012(b) and (c) of the Federal Rules of Bankruptcy Procedure. The defendants seek to dismiss all claims against the three corporate defendants, American Telephonics, Inc. ("ATI"), T.G.I. Leasing, Inc. ("TGIL") and Thurston Group, Inc. ("TGI"), except for the First Claim (the fraudulent transfer claim), the Second Claim (the preference claim), the Fifth Claim (the super lien priority claim) and the Ninth Claim (the contract claim). The defendants also seek to dismiss all claims against the individual defendants, who are officers of the three corporate defendants. Additionally, the defendants have moved for judgment on the pleadings.

## FACTUAL BACKGROUND

The Chapter 7 debtor, Coin Phones, Inc., was a New York corporation engaged in the business of vending customer-owned-or-leased coin-operated telephones ("cocots"). It filed a Chapter 11 petition with the court on July 21, 1989 and was ultimately converted to Chapter 7 on July 6, 1990.

Defendant TGIL is a New York corporation also engaged in the business of vending cocots in New York State. Defendant TGIL, a Delaware corporation, is affiliated with ATI and is similarly engaged in the business of vending cocots in New York State. Defendant TGI is a Delaware corporation affiliated with ATI and is engaged in financial activities associated with ATI. Defendant Richard J. Coghlan ("Coghlan") is an officer and director of ATI. Defendant Patrick J. Haynes III ("Haynes") is an officer and director of ATI, TGIL and TGI. Defendant Russell Thurston Stern ("Stern") is an officer and director of ATI, TGIL and TGI.

The complaint alleges that in the Fall of 1988, the debtor was experiencing significant cash flow difficulties. The debtor met with Stern and Haynes for the purpose of discussing a proposed merger with ATI.

The debtor informed Stern and Haynes that without a sufficient infusion of capital, the debtor would be forced to file for bankruptcy. Because of the inevitable delay in completing a merger, the debtor requested a loan from ATI until the finalization of the merger. Instead, Haynes suggested that the debtor sell a number of cocots to ATI and if the merger was consummated, the property would be returned to the debtor. Thereafter, the debtor sold approximately 336 cocots to ATI and TGIL for approximately $776,000.00, payable in six installments. The purchases were all paid for by TGIL.

Prior to the cocot purchases, the debtor requested an advance payment of $40,000.00, in exchange for which it pledged 67 cocots, in escrow, to ATI upon transfer of each of the installment items. ATI paid 10 percent of the purchase price into an escrow account to cover potential charge backs as a result of any trouble with the equipment. Ultimately, the parties consented to the release to the debtor of all but approximately $5,000.00 of the installment escrow funds. ATI never made a demand for the return of any installment escrow funds.

Between June 14 and July 7, 1989, ATI and the debtor agreed that in lieu of ATI making additional payments into the escrow account, ATI would retain the $40,000.00 advance payment from the initial escrow and ATI would return the escrow phones to the debtor.

On July 20, 1989, the contemplated merger between the debtor and ATI collapsed when ATI learned that New York Telephone Company ("N.Y.Tel.") claimed that the debtor owed it between three to six million dollars for the use of N.Y.Tel's telephone lines. After the collapse of the merger negotiations, ATI completed the sixth and final installment transaction on July 21, 1989. TGIL executed a promissory note to pay the debtor the sum of $160,000.00 on or before October 20, 1989. Three hours later, the debtor filed its voluntary Chapter 11 petition.

The Chapter 11 debtor in possession did not have the resources to manage its own cocots and was unable to pay the amounts demanded by N.Y.Tel. To minimize the harm to their assets, ATI offered to assist the debtor in developing a Chapter 11 reorganizational plan and to provide management services and loans necessary to post a sufficient security deposit with N.Y.Tel. to maintain telephone line service. Accordingly, the debtor in possession agreed to enter into a management contract with ATI. Pursuant to a management contract approved by this court on September 6, 1989, ATI agreed to be the sole and exclusive manager of cocots operated and serviced by the debtor in possession. ATI would provide N.Y.Tel with a sufficient deposit to support additional telephone service for all telephone lines utilized by the debtor in possession. Additionally, ATI was permitted to terminate the telephone lines in the name of the debtor and establish new lines for the ATI cocots in ATI's name. Pursuant to the management agreement, ATI moved into the debtor's offices in, White Plains, New York and changed the keys on the locks and the code to the security system so that the debtor's personnel would not enter into the premises without ATI's authorization and approval. The debtor in possession turned over to ATI all its business records, office equipment and inventory of cocots and parts.

After ATI had been managing the debtor's property for approximately 90 days, the debtor's president requested an inventory schedule ATI was required to prepare under the management agreement and an opportunity to review ATI's collection records, pursuant to the terms of the management agreement. The complaint alleges that the debtor has never received an adequate accounting from ATI accurately describing the debtor's revenues collected and disbursed by ATI.

From January 1990, until ATI ceased rendering management services to the debtor in possession and elected to terminate the management agreement, effective February 28, 1990, matters went sour between the parties. ATI no longer appeared to the debtor as the White Knight acting to rescue the debtor from financial disaster.

Instead, the complaint alleges that ATI failed to keep accurate records of all the debtor's revenues; wrongfully diverted the debtor's revenues, and retained revenues for its own benefit and for the benefit of TGIL and TGI; failed to disburse revenues in the manner required by the management agreement; failed to pay sales taxes as required by the management agreement; failed to provide an inventory of the debtor's property; wrongfully confiscated and sold equipment owned by the debtor and provided invoices to the debtor and the trustee in bankruptcy which contained intentional misstatements regarding the management fees to which ATI was entitled and misstated the expenses actually paid by ATI for the debtor's benefit. These invoices allegedly overstated the management fee in order to increase the super priority lien claimed by ATI in the amount of $505,445.06 pursuant to 11 U.S.C. § 364(c)(1).

## DISCUSSION

### Objectionable Claims

The corporate defendants seek to dismiss the Third, Fourth, Sixth, Seventh and Eighth Claims in the trustee's complaint for failing to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). A claim may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint must be viewed in a light most favorable to the pleader and its allegations must be accepted as true. *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986); *Fine v. City of New York,* 529 F.2d 70, 75 (2d Cir.1975).

### Third Claim: Conversion

■ The Third Claim in the complaint asserts that the corporate and individual defendants wrongfully converted revenues and assets belonging to the debtor, which revenues and property, or the equivalent value, should be returned to the debtor's estate. The Third Count itemizes specific numbers of cocots which were allegedly sold out of pledge, specific numbers of cocots which defendants allegedly failed to account for during the term of the management agreement and revenues and commissions received by ATI for the benefit of the debtors under the management agreement.

It is axiomatic that conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owners' rights. *Hutton v. Klabal,* 726 F.Supp. 67, 72 (S.D.N.Y.1989); *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dept.1982). Although ATI was authorized to manage the debtor's telephone operations, it was not authorized to sell cocots out of pledge or to keep property of the debtor without accounting for same. Accordingly, the Third Claim asserts a valid claim for conversion by the corporate defendants and will not be dismissed.

### Fourth Claim: Breach of Title 11 Fiduciary Duty

■ This claim charges that because the debtor was functioning under 11 U.S.C. § 1107 and ATI's managing contract was approved by this court, it follows that the conduct in which all of the defendants participated constituted a breach of a fiduciary duty in violation of 11 U.S.C. § 1107. This claim stands 11 U.S.C. § 1107 on its head. Under 11 U.S.C. § 1107, a debtor in possession has the powers of a bankruptcy trustee "and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). The fiduciary powers and duties of a trustee are imposed on the debtor in possession and not on those who deal with the debtor in possession. There is nothing in 11 U.S.C. § 1107 that imposes a fiduciary duty

on third parties who transact business with a debtor in possession. Thus, the Fourth Claim fails to state a claim for which relief may be granted and will be dismissed.

### Sixth Claim: RICO Violations

■ The complaint alleges that the defendants committed acts of mail and wire fraud over a period of approximately seven months, beginning at the end of July, 1989 and through February 28, 1990, when ATI terminated the management contract. The acts of mail fraud and wire fraud are alleged to have been in furtherance of a scheme to defraud the debtor and form a pattern of racketeering activity in violation of the RICO statute. 18 U.S.C. § 1962(c). The predicate acts of mail fraud in violation of 18 U.S.C. § 1341 allegedly occurred on November 6, 1989 and January 31, 1990, when ATI transmitted through the U.S. Mails invoices which represented the management fees to which ATI was entitled and the amounts ATI actually expended on behalf of the debtor. The predicate act of wire fraud in violation of 28 U.S.C. § 1343 allegedly occurred on January 30, 1990, when ATI used interstate wires in a telephone call between ATI's office in White Plains, New York and Delta Leasing Co. ("Delta") in Marlton, New Jersey, and wrongfully advised Delta representatives that ATI could not properly identify cocots in which Delta had the exclusive leasehold interest. The "Enterprise" for the purpose of the RICO count was alleged to be the association in fact of defendants ATI, TGIL, TGI, Thurston, Coghlan, Haynes and Stern, all engaged in a scheme to defraud the debtor by wrongfully diverting the debtor's assets and revenues.

To establish a civil RICO claim, the complaint must plead actions on the part of an enterprise through a pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co., Inc*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A pattern of racketeering activity requires the commission within a ten-year period of at least two predicate acts that violate the laws listed in 18 U.S.C. § 1961(1) which must be related and must amount to, or otherwise constitute, a threat of continuing racketeering activity. *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901. Section 1961(1) of Title 18 defines "racketeering activity" to include, among others, violations of federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. The defendants must have used the mail or telephone wires to obtain money or property by means of sale or fraudulent preferences or for purposes of executing a scheme to defraud. *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990). The Second Circuit has held:

> "To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme. *Schmuck v. United States*, 489 U.S. 705, 712 [109 S.Ct. 1443, 1448, 103 L.Ed.2d 734] (1989);"

*Pereira v. United States*, 347 U.S. 1, 8 [74 S.Ct. 358, 362, 98 L.Ed. 435] (1954). *McLaughlin v. Anderson*, 962 F.2d 187, 190–91 (2d Cir.1992).

For a pattern to exist, the alleged criminal acts should be characterized by their relatedness and continuity. *Proctor & Gamble v. Big Apple Industrial Building, Inc.*, 879 F.2d 10, 15 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990). The concepts of relatedness and continuity have been described as follows:

> For the purposes of RICO, "continuity" means that separate events occur over time and perhaps threaten to recur, while "relatedness" means—given that different acts of racketeering activity have occurred—that there is a way in which the acts may be viewed as having a common purpose. These concepts are separately compartmentalized for analytic purposes, largely to ensure that the wrongful activity alleged is neither sporadic nor isolated, and that the acts have similar or common purpose and direction.

*Proctor & Gamble*, 879 F.2d at 17.

In reference to the concept of "continuity," the Supreme Court emphasized that

periodic acts extending over a few weeks or months will not be sufficient to establish the long-term association that exists for criminal purposes.

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a *substantial period* of time. Predicate acts extending over a *few weeks or months* and *threatening no future criminal conduct* do not satisfy this requirement.

. . . .

. . . . Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a *long-term association* that exists for criminal purposes. *H.J. Inc.*, 492 U.S. at 242–43, 109 S.Ct. at 2902 (emphasis added).

In the instant case, all but one of the alleged predicate acts extended for a limited period of approximately seven months from the end of July, 1989 to the end of February, 1990. In paragraph 116 of the complaint, it is alleged that the racketeering activity regarding the claims of wire fraud continued at least until November of 1990, when many of the debtor's cocots were wrongfully sold by ATI without providing any accounting to the debtor for such benefits and revenues.

■ Hence, the bulk of the defendants' alleged racketeering conduct is stated to have occurred in connection with ATI's attempt to rescue the debtor from its perilous financial predicament, which resulted in the management agreement the defendants allegedly violated. In essence, the complaint charges the defendants with a pattern of racketeering activity in connection with a closed-end scheme with respect to an unrealized merger and a single management agreement, which agreement was terminated five months after it was approved by this court. The complaint fails to allege that the defendants' fraudulent activities will continue in the future on the existence of a threat of continuity or "a long-term association that exists for criminal purposes." *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902. *See also Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989) (Continuity is sufficiently alleged where related predicates extended over "a matter of years."); *Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 668 (2d Cir. 1989) (allegedly fraudulent acts occurred "pursuant to a longstanding contract over a considerable period of time"). An alleged single fraudulent scheme affecting one alleged victim would render the concept of a pattern of racketeering conduct meaningless. *Continental Realty Corp. v. J.C. Penney Co., Inc.*, 729 F.Supp. 1452, 1455 (S.D.N.Y.1990). The predicate acts must amount to, or threaten the continued likelihood of racketeering activity. *Atlantic Gypsum Co., Inc. v. Lloyds International Corp.*, 753 F.Supp. 505, 511 (S.D.N.Y.1990).

■ The complaint alleges fraudulent conduct and breaches with respect to the management agreement between the debtor in possession and ATI. As stated by one court, the plaintiff has taken a simple breach of contract or garden-variety fraud claim and has attempted to boot-strap it into a RICO violation. *Robert Suris General Contractor Corp. v. New Metro. Federal Sav. & Loan Ass'n.*, 873 F.2d 1401, 1404 (11th Cir.1989). Routine business communications that reflect a dispute between the parties as to their business arrangement do not establish fraudulent intent for purposes of the mail and wire fraud statutes. *Atlantic Gypsum*, 753 F.Supp. at 513. Accordingly, the Sixth Claim, which attempts to assert RICO violations will be dismissed.

*Seventh Claim: Common Law Fraud*

The Seventh Claim incorporates all of the allegations that were improperly characterized as racketeering activity in the Sixth Claim and concludes that as a result of the wrongful conduct previously alleged, the defendants have participated in acts committed to defraud the debtor. Because the incorporated Sixth Claim is stricken, the complaint will have to be amended so as to plead fraud with particularity to satisfy Federal Rule of Civil Procedure 9(b). *See Stern v. Leucadia National Corp.*, 844 F.2d 997 (2d Cir.), *cert. denied*, 488 U.S.

852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987). Therefore, the Seventh Claim is dismissed with leave to replead fraud in accordance with Federal Rule of Civil Procedure 9(b).

### Eighth Claim: Common Law Breach of Fiduciary Duty

■ The complaint alleges in this claim that the terms of the management agreement create, as a matter of law, a fiduciary relationship between ATI, its officers and directors, and the debtor and its creditors. The Eighth Claim then alleges that the defendants breached their fiduciary duties owed to the debtor and its creditors. Pursuant to the management agreement, ATI was entrusted with the debtor's inventory, equipment and office facilities to manage and service debtor's coin telephones and to collect revenues from these operations for remittal to the debtor, subject to ATI's contractual compensation. Although the complaint alleges a breach of the management contract by various activities on the part of the defendants, it may additionally assert that such conduct also constituted a breach of a fiduciary duty in connection with the defendants' management of the debtor's business and property. Therefore, the motion to dismiss the Eighth Claim will be denied.

### The Individual Defendants

■ The complaint charges that each of the individual defendants, as officers and directors of the corporate defendants, participated in the scheme to loot and defraud the debtor. Individual defendants are not absolved from liability for their own acts of fraud simply because they performed the proscribed conduct as corporate officers. *Morin v. Trupin,* 747 F.Supp. 1051, 1067–68 (S.D.N.Y.1990); *Banco De Desarrollo Agropecuario, SA. v. Gibbs,* 709 F.Supp. 1302, 1305–06 (S.D.N.Y.1989). Therefore, the motion by the individual defendants to strike all claims against them that are not dismissed by this court as against the corporate defendants, will be denied.

### Defendants' Motion For Judgment on the Pleadings

In light of the fact that this court has sustained the Third and Eighth Claims and the defendants have not objected to the Second, Fifth and the Ninth Claims in the complaint, it follows that the defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) will be denied because there are disputable issues of fact which will have to be tried with respect to legally supportable claims. A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *U.S. v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The present motion made pursuant to Federal Rules of Bankruptcy Procedure 7009(b) and 7012(b) and (c) is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. Defendants' motion to dismiss the Third and Eighth Claims in the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

3. Defendants' motion to dismiss the Fourth and Sixth Claims in the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.

5. Defendants' motion to dismiss the Seventh Claim in the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted, with leave to replead fraud with particularity to satisfy Federal Rule of Civil Procedure 9(b). Such repleading shall be made, if at all, within ten days of the date of the order to be entered.

5. Defendants' motion to dismiss all claims against the individual defendants is denied.

6. Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is denied.

398

SETTLE ORDER on notice in accordance with the foregoing.