**ALL WORLD PROFESSIONAL TRAVEL SERVICES, INC., a corporation, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**No. ED CV 02–849 RT.**

United States District Court, C.D. California, Eastern Division.

July 3, 2003.

Farley J. Neuman, Jenkins Goodman & Neuman, San Francisco, CA, Gretchen M. Nelson, Gretchen M. Nelson Law Offices, Los Angeles, CA, Linda S. Platisha, Linda S. Platisha Law Offices, Yorba Linda, Dean Browning Webb, Dean Browning Webb Law Offices, Vancouver, WA, for Plaintiffs.

Rodney Joseph Stone, Robert E. Cooper, Robert P. Berry, Gibson Dunn & Crutcher, Los Angeles, CA, for Defendant.

## ORDER DENYING DEFENDANT AMERICAN AIRLINES, INC'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered Defendant American Airlines, Inc. ("American")'s motion to dismiss the complaint of All World Professional Travel Services, Inc. ("All World") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the opposition filed by All World and American's reply. Based on such consideration, the Court concludes as follows.

## I.

## BACKGROUND [1]

On August 14, 2002, All World Professional Travel Services, Inc. ("All World") filed a class action complaint against American Airlines, Inc. ("American") alleging that American violated the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and breached a contract with All World.

All World is a travel agency, and in the months following September 11, 2001, and continuing to the present, American, (along with a non-party co-conspirator, AMR Corporation, and a RICO enterprise, the Airline Reporting Corporation ("ARC")), engaged in a pattern of extorting money from All World by forcing it to pay a $200 per ticket fee for processing refunds on behalf of passengers who were unable to use their airline tickets in the days immediately following the tragedies that struck the World Trade Center and elsewhere when air traffic was halted or severely disrupted.

In the aftermath of the September 11 tragedies, the U.S. Department of Transportation ("DOT") issued a directive to all airlines against applying non-refundability/penalty provisions for cancelled flights. American's own rules required American to refund tickets under circumstances such as occurred after September 11.

American initially authorized travel agents to assist in the processing of refunds for passengers. In response to this request, All World processed thousands of refunds for passengers through the ARC.[2]

---

1. The facts stated in this Background portion of the order are taken from the Complaint and are deemed true for the purposes of determining a motion to dismiss under Rule 12(b)(6) *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

2. The ARC acts as a central clearing house for travel agents, and as an agent for approxi-

mately 140 airlines, so that travel agents and airlines can report, settle and account for airline ticket sales and refunds. The ARC also provides an accreditation program for travel agents. Prior and subsequent to September 11, 2001, travel agents routinely processed refund requests through the ARC.

Shortly after All World processed the September 11–related refunds through the ARC, American unilaterally claimed that refund requests for passengers unable to travel as a result of the September 11th tragedies should not be processed through the ARC, but should be sent directly to American instead. All World was unaware of American's purported change in policy, and continued to process refunds through the ARC. Thereafter, American began issuing "Debit Memos" (demands for money), charging All World an "administrative service charge" and "penalty fee" of $100 or $200 per ticket refunded through the ARC.[3]

Allegedly, in issuing the Debit Memos, American implicitly made the following threats that American would terminate the right of All World to issue airline tickets on American, that American would notify all other airlines that American had terminated its contracts with All World, and that American would impose additional penalties and fees if All World did not pay the Debit Memos When All World contested the Debit Memos and refused to pay them, American demanded payment and threatened economic harm.

All World alleges the following claims in its complaint: 1) violation of RICO, 18 U.S.C. § 1962(c) ("Section 1962(c)"), 2) violation of RICO, 18 U.S.C. § 1962(d) ("Section 1962(d)") (conspiracy to violate Section 1962(c)), 3) breach of contract, 4) unjust enrichment, and 5) declaratory and injunctive relief.

On November 15, 2002, American filed this motion to dismiss All World's complaint pursuant to Rule 12(b)(6).

**3.** Initially, American charged $200 per refunded ticket, but because the $200 penalty in some cases exceeded the price of the ticket, American changed the requirement such that

## II.

## ANALYSIS

### A. STANDARD FOR ANALYZING A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All material allegations in the complaint will be taken as true and construed in the light most favorable to the non-moving party. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996). A cause of action will be dismissed only where there is either "a lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

### B. APPLICATION OF DOT REGULATIONS

American raises two threshold issues. First, American maintains that travel agencies must file this complaint with the DOT, not with this court. Second, American maintains that the penalties it charged All World are expressly permissible under federal law and thus cannot serve as the basis for any of All World's alleged claims.

if a ticket was $100, the travel agents were forced to pay a $100 penalty, and if the ticket price was $200 or more, the penalty was $200.

### 1. Whether These Claims must be Brought Before the DOT

American maintains that if travel agencies have complaints regarding unfair and deceptive practices by airlines and unfair methods of competition by airlines, such complaints may be filed with the DOT, not in this court. American cites to 49 U.S.C. § 41712 ("Section 41712")for this proposition.

■ American's position is correct in that § 41712 does give ticket agents the ability to complain to the Secretary of Transportation. 49 U.S.C. § 41712. However, the type of claims in the Complaint are not meant to be covered by § 41712. Section 41712 was designed to bolster and strengthen antitrust enforcement. *Pan Am. World Airways, Inc. v. U.S.*, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). The provision is not concerned with private rights but with protection of public interest. *American Airlines v. North American Airlines*, 351 U.S. 79, 76 S.Ct. 600, 100 L.Ed. 953 (1956). Congress did not intend to require the type of conduct alleged in the Complaint to be submitted to the DOT. *In re Air. Transportation Excise Tax Litigation*, 37 F.Supp.2d 1133, 1140 (D.Minn.1999)(rejecting the argument that the claims at issue, including claims for breach of contract and unjust enrichment, should have been channeled through the DOT, citing *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995)(noting that when Congress "dismantled" the regulatory regime, it did not intend "to establish, simultaneously, a new administrative process for DOT adjudication of private ... disputes")). Accordingly, the Court concludes All World was not required to file its alleged claims in the Complaint for adjudication by the DOT.

### 2. Whether the Penalties Charged by American were Permissible under Federal Law

The federal law that American claims permits it to impose the subject penalties is 14 C.F.R. § 253.7 ("Section 253.7"). American argues that under this provision, airlines are specifically permitted to set "terms restricting refunds of the ticket price" and to "impos[e] monetary penalties," requiring only "conspicuous written notice" to do so. Thus, according to American, the penalties it charged the travel agencies including All World are expressly permissible under federal law.

■ American further argues that travel agents, including All World, expressly agreed to be bound by DOT regulations when they executed the Agent Reporting Agreement ("ARC Agreement").[4] According to American, one of the provisions of the ARC Agreement requires that travel agents only make refunds in accordance with tariffs, rules, regulations, and instructions issued by the carrier. American's argument seems to be that since travel agents agree in the ARC Agreement to comply with the airlines' rules having to do with refunds, and since Section 253.7 permits airlines to restrict refunds, then travel agents agree to be bound by Section 253.7 including the imposition of penalties if a travel agent violates such restriction.

American's position here is unfounded for two reasons.

First, Section 253.7 applies to the relationship between an air carrier and its passengers, not travel agencies. The provision reads:

A passenger shall not be bound by any terms restricting refunds of the ticket price, imposing monetary penalties on

---

4. The ARC Agreement is a uniform contract entered into with All World by American through its agent, the ARC.

passengers, or permitting the carrier to raise the price, unless the passenger receives conspicuous written notice of the salient features of those terms on or with the ticket.

Section 253.7 does not apply to travel agencies.

Second, the regulation only imposes the obligation that air carriers provide conspicuous notice as to any term that restricts a passenger's ability to obtain a refund or imposes a monetary penalty on a passenger. It would be illogical to conclude that because American is permitted by regulation to penalize a passenger for obtaining a refund, it is permitted to do the same to a travel agent for processing the refund.

The logic is even more strained because in the current situation, there is no dispute that passengers were entitled to refunds, All World's Complaint alleges that shortly after the events of September 11th, the DOT issued a directive to air carriers prohibiting them from applying non-refundability provisions for tickets that were unusable as a result of the September 11, 2001, tragedies. As there is no relationship between § 253.7 and American's imposition of penalties on travel agents for supposed improper processing of refunds, The Court concludes that American's travel agent penalties imposed on All World are not, as American claims, expressly permissible under federal law.[5]

## C. PREEMPTION OF STATE CLAIMS UNDER THE AIRLINE DEREGULATION ACT ("ADA")

American claims that all of the state claims asserted by All World are preempt-ed by the Airline Deregulation Act ("ADA"), Pub.L.No. 95–504, § 10592 Stat. 1708.[6]

### 1. The ADA And Preemption Under the ADA

In 1978, Congress enacted the ADA, thereby amending the Federal Aviation Act of 1958, in order to "encourage, develop and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." H.R. Conf. Rep. No. 95–1779, p. 53 (1978), U.S.Code.Cong. & Admin. News 1978, 373, cited in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 421, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)(Stevens, J. dissenting).

To prevent States from undoing federal deregulation, the ADA includes the following preemption clause: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to rates, routes, or services of an air carrier that may provide air transportation under this subpart." 49 U.S.C.App. § 1305(a). In 1994, Congress recodified § 1305(a), now found at 49 U.S.C. § 41713(b)(1). As part of the recodification, the phrase "rates, routes, or services" became "price, route, or service." 49 U.S.C. § 41713(b)(1).

■ In drafting the ADA, Congress retained the savings clause that was present in the 1958 Federal Aviation Act, which reads: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter

---

**5.** American also argues that All World's breach of contract claim must be dismissed under the federal defense doctrine. American urges that since it was permitted to impose penalties under § 253.7, this regulation necessarily invokes a federal defense to All World's state claims. American's argument here fails because, as explained above, § 253.7 is not applicable in this case.

**6.** American also maintains that the ADA preempts All World's federal RICO claims. *See* Part II(D)(1), *infra.*

are in addition to such remedies." 49 U.S.C.App. § 1506, modified and recodified as 49 U.S.C. § 40120(c)("A remedy under this part is in addition to any other remedies provided by law"). The savings clause protects the ability of states to control non-economic matters concerning airlines' within their borders. *Chrissafis v. Continental Airlines, Inc.*, 940 F.Supp. 1292, 1297 (N.D.Ill.1996), citing *Hodges v. Delta Airlines, Inc.* 44 F.3d 334, 337 (5th Cir.1995) and *Morales, supra,* 504 U.S. at 425, 112 S.Ct. 2031 (Stevens, J. dissenting)(explaining that the preemption clause "represents simply a codification of existing law and leaves unimpaired the states' authority over intrastate matters," quoting Hearings on H.R. 8813 before the Subcommittee on Aviation of the House Committee on Public Works and Transportation, 95th Cong., 1st Sess. 200 (1977)).

2. *Whether All World's State Law Claims are Preempted by the ADA*

All World brings three state law claims breach of contract, unjust enrichment, and a claim for declaratory and injunctive relief. American maintains that the ADA preempts all of All World's state law claims.

"[F]or a claim to be preempted by the ADA, two things must be true: (1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Chrissafis, supra,* 940 F.Supp. at 1297, citing *Travel All Over World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1432 (7th Cir.1996). *See also Leonard v. Northwest Airlines,* 605 N.W.2d 425, 429 (Minn.Ct.App.2000)(setting forth the two-part test for resolving whether a state claim is preempted by the ADA).

a. *Enactment or Enforcement of State Law*

i. *The Contract Claim*

All World's breach of contract claim has two parts. First, All World alleges that American's actions in charging the Debit Memos were extra-contractual ("Part I of All World's breach of contract claim"). All World contends that the ARC Agreement, the relevant contract between the parties, did not provide any contractual basis for which to charge travel agents a $200 fee (or any other fee) for issuing refunds through the ARC, and that American breached the ARC Agreement by collecting payment on these Debit Memos.

Second, All World alleges that the amount American charged the travel agents far exceeds any damages to American, and thus that American breached the ARC Agreement by charging a penalty, which is illegal under Virginia law, the law governing the contract ("Part II of All World's breach of contract claim").

■ Part I of All World's breach of contract claim falls under the scope of *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), which holds that Court enforcement of a private contract does not constitute "a State's enactment or enforcement of any law." *Wolens,* 513 U.S. at 228–29, 115 S.Ct. 817. All World's claim that American acted extra-contractually does not allege "a violation of state-imposed obligations, but rather....that the airline breached a self-imposed undertaking." *Travel All Over the World, supra,* 73 F.3d at 1432 (7th Cir.1996). Because Part I of All World's breach of contract claim does not derive from the enactment or enforcement of state law, this part of the contract claim is not preempted by the ADA.

■ Part II of All World's breach of contract claim does, however, derive from

the enactment or enforcement of state law. In this part of the claim, All World alleges that the amount American charged in the Debit Memos constitutes a penalty under Virginia law. The rule against contract penalties is an equitable doctrine arising from a public policy against compulsion and has at its foundation the unconscionability doctrine. E. Allan Farnsworth, *Contracts,* § 12.18 (1982), John D. Calamari & Joseph M. Perillo, *Contracts,* 564–65 (1977). The parties' bargain is irrelevant to the rule and often is frustrated by its application. Farnsworth, *supra,* at § 12.18, Calamari & Perillo, *supra,* at 564–65. Part II of All World's breach of contract claim is unrelated to the parties' contract (the ARC Agreement), and instead seeks to enforce state-imposed obligations against contract penalties. Thus, Part II of All World's breach of contract claim is subject to ADA preemption under the first prong of the preemption test.

### ii. *The Unjust Enrichment Claim and Claim for Declaratory and Injunctive Relief*

All World brings a claim for unjust enrichment, alleging that American has been unjustly enriched by its scheme to collect fees from All World. All World also brings a claim for declaratory and injunctive relief.

Courts have held that unlike contractual duties which are self-imposed, the elements for unjust enrichment and injunctive relief are defined by state law. *See Lehman v. USAIR Group, Inc.,* 930 F.Supp. 912, 915 (S.D.N.Y.1996)(finding that state law claim of unjust enrichment comes under the scope of 49 U.S.C. § 41713(b)(1)), *Deerskin Trading Post, Inc. v. United Parcel Serv.,* 972 F.Supp. 665, 673 (N.D.Ga.1997)(finding claim for

injunctive relief preempted by Federal Aviation Administration Authorization Act, whose preemption provisions are applied in an identical manner as the preemption provision of the ADA, *see id.* at 668), because awarding injunctive relief would remove a contract claim from the realm of routine breach of contract actions, and would enhance the parties' bargain based on state policy.

Following the reasoning of *Deerskin,* All World's claim for declaratory relief also goes beyond the parties' bargain. All World's claim for declaratory relief would impermissibly enhance the bargain based on state policy. *Wolens, supra,* 513 U.S. at 232, 115 S.Ct. 817 (finding that breach-of-contract actions are not preempted by the ADA, but that courts are confined "in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement").

■ The Court concludes that the unjust enrichment, injunctive relief and declaratory relief claims do involve the enforcement of state law. Having determined that Part II of All World's breach of contract claim, the unjust enrichment claim, and the claims for declaratory and injunctive relief all derive from the enforcement of state law, the court must now decide whether these claims relate to airline prices or services.[7]

### b. *Relationship to Price and/or Services*

### i. *Price*

■ A claim relates to airline prices if the claim expressly refers to price or has a significant economic effect upon price.

---

**7.** The claims clearly do not relate to airline routes, the third type of claim preempted by

49 U.S.C. § 41713(b)(1).

*Travel All Over the World, supra,* 73 F.3d at 1432.

In the present analysis, the Court must ascertain whether Part II of All World's breach of contract claim, the unjust enrichment claim, and the claim for declaratory and injunctive relief relate to American's prices. The Court must consider the claims in the context of the facts. *Id.* at 1433 (citing *Hodges, supra,* 44 F.3d at 336).

Each of All World's state claims at issue arise out of All World's allegations that American charged improper fees or penalties by issuing Debit Memos to All World for having processed passenger refunds through the ARC. All World alleges that American asserted that All World had violated a rule barring it from processing passenger refunds through the ARC. All World, however further alleges that it was unaware of any such rule, and thus continued to process refunds through the ARC, as American had directed it to do on or about September 12, 2001.

Based on this alleged factual context, which the Court must accept as true, it is apparent that All World's claims involving the Debit Memos do not refer to price,

instead, they refer to American's imposition of fees and penalties, on travel agents who had been given a mandate to issue post-September 11th passenger refunds.

■ Nor do the Debit Memos "relate" to American's prices, as that term is interpreted by the Ninth Circuit. The Ninth Circuit has concluded that Congress intended to preempt "only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir. 1998). Applying the Ninth Circuit's reasoning in *Charas,* All World's claims do not fall within the scope of ADA preemption because allowing All World to pursue these claims (whether Part II of the breach of contract claim, the unjust enrichment claim, or the claims for declaratory and injunctive relief), will not have any effect on the economic deregulation and the forces of competition within the industry. Instead, only American's treatment of travel agents will be affected.[8]

American argues that case law shows that an airline's ticket refund or ticket reissuance policy directly impacts prices,

---

**8.** Many courts have demonstrated a reluctance to preempt state law claims that do not undermine the overall purpose or goal of a federal law. *See Morales v. TWA,* 504 U.S. 374, 390, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992) (declining to impose a blanket ban on any state law claim against airlines, stating that " '[s]ome state actions may affect [airline prices] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect"), *American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 ( 1995)(holding that state law claims for breach of contract are not preempted by the ADA because holding airlines to the terms of a contract they entered into freely would not have an adverse effect on competition in the airline industry), *In re Air Transportation Excise Tax Litigation,* 37 F.Supp.2d 1133, 1140 (D.Minn.1999)(finding that contract and tort claims, including

unjust enrichment, were not preempted because they did not "affirmatively prescribe (or proscribe) the airlines' conduct in a way that impedes competition or adversely impacts the economics of the airline industry"), *Taj Mahal Travel v. Delta Airlines,* 164 F.3d 186, 188, 195 (3rd Cir.1998)(holding that tort claims were not preempted because the application of state law in the circumstances did not frustrate Congressional intent nor impose a state utility-like regulation on the airlines), *Travel All Over World v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir.1996) (holding that the contract, slander and defamation claims were not preempted because the contract claim fell within the *Wolens* exception and the slander and defamation claims did not have a significant effect on airline rates, routes, or services).

citing *Statland v. American Airlines, Inc.,* 998 F.2d 539 (7th Cir.1993)(holding that passenger's state law claims are preempted because canceled ticket refunds relate to rates), *Howell v. Alaska Airlines,* 99 Wash.App. 646, 994 P.2d 901 (2000) (holding that passenger's state law claim contesting Alaska Airlines' refusal to refund the price of a non-refundable ticket is preempted), *Blackner v. Continental Airlines,* 311 N.J.Super. 10, 709 A.2d 258 (1998)(holding that passenger's state law claims arising from a $60 surcharge to replace a lost ticket are preempted), and *Leonard v. Northwest Airlines,* 605 N.W.2d 425 (Minn.Ct.App.2000) (holding that passenger's state law claims to recover reissuance fees charged for tickets are preempted). These cases are all distinguishable from the case at hand because they all involve passengers' attempts to contest airlines' ticket refund or reissuance policies. By contrast, the claims here do not arise out of ticket refunds, but out of American's treatment of the manner in which the refund, which allegedly had to be paid, was processed by travel service agents. The distinction is substantial because while the former is a consideration when an air carrier sets it prices, the latter only has a remote relationship to prices, especially since the passenger refund had already been paid.

This is not to say that state law claims brought by travel agents may never be preempted by the ADA. They may. *See, e.g. Lyn–Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282 (5th Cir.2002)(holding that travel agency's state law claim for intentional interference with business relationships, based on the airline's luring the customers away from the travel agency with discounted fares, was preempted because the travel agency sought to apply state law in a way that would regulate American's pricing policies).

However, in the Ninth Circuit such claims must still satisfy the standard of *Charas,* the claims must adversely impact economic deregulation of the airlines and the forces of competition within the airline industry in order to be preempted by the ADA. *Charas,* 160 F.3d at 1261. Such an impact is not deducible here. Allowing All World to proceed with its claims against American will not have the effect of regulating American's pricing policies, commission structure or reservation practices. The only aspect of American's business undertakings that is addressed by All World's claims is American's alleged scheme to recoup its refund losses in part by charging All World with Debit Memos.

In sum, none of All World's state law claims relate to American's prices.

### ii. *Services*

We now turn to consider whether All World's state claims relate to services.

The Ninth Circuit definitively decided what Congress intended by the word "service" in *Charas,* stating:

> Congress used the word "service" in the phrase "rates, routes, or service" in the ADA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo or mail ... [S]ervice ... refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, "This airline provides service from Tucson to New York twice a day.") To interpret "service" more broadly is to ignore the context of its use, and, it effectively would result in the preemption of virtually everything an airline does. It seems clear to us that that is not what Congress intended.

160 F.3d at 1261, 1265–66.

All World's state law claims do not come within the Ninth Circuit's interpretation of

the meaning of the word "service." The claims do not relate to price, as described above, and do not have anything to do with schedules, origins, destinations, cargo or mail. Under *Charas,* to interpret "service" to include All World's state law claims here would be to extend preemption beyond Congress's intentions. *Charas,* 160 F.3d at 1265–66.

As All World's breach of contract claim (Part II), unjust enrichment claim, and claims for declaratory and injunctive relief do not relate to American's prices or services, they do not satisfy the second prong of the preemption test. Therefore, the Court concludes that All World's state law claims are not preempted by the ADA.

## D. PLAINTIFF'S RICO CLAIMS

The substantive provision of RICO, 18 U.S.C. § 1962, describes the prohibited activities and provides for four different causes of action. Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise...." Section 1962(b) prohibits the acquiring or maintaining of an interest in, or control of, any enterprise engaged in interstate commerce using funds from racketeering activity. *See* 18 U.S.C. § 1962(b). Section 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) provides a cause of action for conspiring to violate any of the provisions in subsections (a), (b), or (c).

All World brings claims under §§ 1962(c) and (d).

### 1. *Whether the ADA Preempts All World's RICO Claims*

American argues that the ADA preempts All World's RICO claims. It contends that although the ADA preemption clause only applies to state laws, 49 U.S.C.App. § 41713(b)(1),the ADA has a comprehensive nature, *Morales, supra,* 504 U.S. at 384, 112 S.Ct. 2031, and the comprehensiveness of the ADA means that other law that is contrary to federal law is excluded. American further argues that the airline industry is thoroughly regulated by the DOT, which has the ability to investigate claims against air carriers, halt practices deemed unfair or deceptive, and assess civil penalties.

American supports its argument by citing to *Cleveland v. Beltman North American Co., Inc.,* 30 F.3d 373 (2d Cir.1994). That case involved an action by shippers against a carrier to recover for damage to shipped goods. *Cleveland,* 30 F.3d at 374–75. On appeal, the Second Circuit held that the Carmack Amendment preempted plaintiff's claim for punitive damages, because, despite the Carmack Amendment's savings clause, to award punitives would frustrate the "uniformity goal" of the Amendment. *Id.* at 379. American maintains that here, as in *Cleveland,* Congress has created a comprehensive scheme of procedures for enforcement within the airline industry.

Finally, American argues that ADA's comprehensiveness precludes All World from either litigating the lawfulness of American's alleged fees and penalties in the guise of a RICO claim or sustaining a separate RICO claim for treble damages.

■ American's arguments here are not persuasive. First, it is clear that the ADA was not intended to completely subsume and occupy the field of airline liability. Numerous claims against airlines involving, for example, contracts and the Sher-

man Act, have been allowed to proceed in the federal courts, confirming that the ADA's preemption provision is limited to state law claims. *See, e.g., Wolens, supra,* 513 U.S. at 229–29, 115 S.Ct. 817 (holding that the ADA does not preempt contract claims), *In re Travel Agency Commission Antitrust Litigation,* 898 F.Supp. 685 (D.Minn.1995)(denying airlines' motion for summary judgment of Sherman Act claims brought by class of travel agents against airlines arising out of airlines' revised commission policies), *In re Northwest Airlines Corp. Antitrust Litig.,* 208 F.R.D. 174 (E.D.Mich.2002) (denying airline's motion for summary judgment and granting certification of passenger-customer class who alleged that defendants' practice of barring hidden city ticketing constituted a violation of the Sherman Act).

 Second, American's contention that the ADA is expansive enough to include coverage of the RICO claims here is non-meritorious. American cites two cases where the courts found RICO to be excluded or preempted by other federal statutes that are comprehensive in scope. *Talbot v. Matthews,* 961 F.2d 654, 662 (7th Cir.1992)(finding that the conduct giving rise to the RICO claim is wrongful only by virtue of labor laws, and thus the claim is preempted by the National Labor Relations Act ("NLRA")) and *Franks v. O'Connor Corp.,* No. Civ.A.92–0947, 1992 WL 301266, at *3 (E.D.Pa. Oct. 16, 1992) (stating that the Labor Management Relations Act ("LMRA") preempts RICO claims based on conduct that is unlawful only by virtue of federal labor law). *Talbot* and *Franks* are distinguishable because the predicate acts that formed the basis of the claims in those cases arose solely from labor law violations, so the RICO claims were preempted by the NLRA and LMRA. Here, All World's RICO claims do not arise from conduct constituting ADA violations, but instead arise out of mail and wire fraud, and extortion.[9]

Third, American's reliance on *Cleveland* is misplaced. The statute at issue in that case, the Carmack Amendment, provided a statutory framework for a shipper's recovery for losses or injuries to property by carriers involved in the shipment. *See* 49 U.S.C. § 11707. Because of the statutory framework set up in the Carmack Amendment, courts have found that to allow "claims to supplement that system by imposing greater liability than that imposed under the Amendment would undermine the certainty that the legislature intended to provide." *Pietro Culotta Grapes Ltd. v. Southern Pacific Transportation Company,* 917 F.Supp. 713, 716 (E.D.Cal.1996). By contrast, the ADA does not provide any comparable system for assessing an airline's liability or imposing damages for such liability.

Finally, American argues that to award All World treble damages under RICO while Congress has omitted that remedy within the ADA would create a new remedy not intended by Congress and would undermine the uniformity envisioned by its regulatory scheme. This argument is not persuasive. First, American points to no provision in the ADA that is in conflict with RICO. Second, imposing treble damages for air carrier liability under the antitrust laws, 15 U.S.C. § 15, has never been found to undermine the alleged uniformity of the ADA's regulatory scheme Likewise,

9. American contends that its alleged conduct is only allegedly wrongful by virtue of All World's state law claims, that those claims are preempted by the ADA, and that to allow RICO claims to include these preempted claims within its scope would undermine the ADA's regulatory scheme. However, as discussed above, All World's state law claims are not preempted by the ADA, and this argument fails accordingly.

treble damages for RICO violations will also not undermine the system.

For these reasons, the Court concludes that the ADA does not preempt All World's RICO claims.

### 2. Whether All World Has Stated a Valid RICO Claim

■ To state a claim under Section 1962(c), a plaintiff must allege the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). "Racketeering activity" under RICO is defined as any act "chargeable" or "indictable" under a number of enumerated state and federal offenses ("predicate" offenses), including extortion and mail fraud. *See* 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two predicate acts. *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1152 (9th Cir.1992), 18 U.S.C. § 1961(5).

American argues that for five reasons, All World has not adequately stated valid RICO claims.

First, American contends that All World attempts to escape the ADA's preemptive and comprehensive scope by "shoehorning" its claims into a federal RICO violation. Not so. As discussed above, All World's state law claims are not preempted by the ADA.

Second, American argues that All World's RICO claims must fail because contractual disputes cannot form the basis of a predicate act under RICO American cites two cases for this proposition. *Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434 at *4 (N.D.Cal. Feb. 22, 2000)(dismissing RICO claim because the facts alleged by plaintiff constituted only contractual disputes that were "not the types of activities that RICO was intended to eliminate") and *In re Coin Phones, Inc.* 148 B.R. 391, 396 (Bankr.S.D.N.Y.1992)(refusing to allow plaintiff to take a simple breach of contract and "boot-strap" it into a RICO violation).

■ American's argument here fails because it is well settled that facts surrounding contractual disputes may support a RICO claim. *See, e.g., Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)(reversing dismissal of RICO complaint arising out of contract dispute between joint venturers exporting aviation parts), *Arabian American Oil Co. v. Scarfone*, 939 F.2d 1472 (11th Cir.1991)(plaintiff not prohibited from bringing federal RICO action merely because breach of contract claim existed for same conduct), *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062–64 (4th Cir.1984)(reversing dismissal of RICO claims by real estate developer alleging that condominium unit purchasers exacted money through threats of economic harm, and rejecting district court's determination that the complaint stated "at best a garden-variety commercial breach of contract").

American's third argument is that All World has not alleged facts showing extortion by American. Extortion, as defined by 18 U.S.C. § 1951(b)(2) is the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." American maintains that its Debit Memos do not satisfy this definition of extortion. Instead, American argues that the Debit Memos represent "economic leveraging," or "hard bargaining," citing, e.g., *Toms v. Pizzo*, 4 F.Supp.2d 178, 183–84 (holding that defendant's threats of economic pressure to force plaintiff to perform more work than he allegedly contracted for did not constitute extortion).

■ American's argument is not convincing because, as evidenced by the allegations in the Complaint, the parties were never engaged in hard bargaining with respect to a prospective contract. Instead, the extortion alleged here arises out of American's allegedly improper application of a provision in a contract between All World and ARC with threats of detrimental economic consequences if All World did not pay the refund fees or penalties.

The fourth assertion by American is that All World fails to allege extortion because All World merely alleges a contract dispute. American urges that it was contractually permitted to issue the Debit Memos and to terminate travel agents who fail to pay them. It further maintains that All World agreed to comply with all instructions of American, and agreed to make refunds in accordance with American's instructions when it adopted the ARC Agreement. American states that the acts which All World alleges constitute extortion are actually rights provided to American by the contract of the parties, rights to which All World agreed when it signed the ARC agreement.

Indeed some courts have held that mere contractual disputes cannot constitute extortion. *See, e.g., Toms, supra,* 4 F.Supp.2d at 184 (W.D.N.Y.1998). ("Allegations concerning the scope of [plaintiffs'] contractual obligations cannot suffice as predicate acts under RICO because they involve only what appears to be a disagreement concerning what [plaintiffs'] obligations were.") Other courts have disagreed with this proposition. *See, e.g., Scarfone, supra,* 939 F.2d 1472, (11th Cir. 1991) ("[M]any RICO cases involve contract disputes.")

However, this Court need not decide whether disputes regarding contractual obligations may constitute extortion because All World alleges in the Complaint that "American has no enforceable contract or other legal basis that entitles it to collect the ... penalties". Because All World alleges that Defendants have no contractual or other legal basis to collect money from them, Plaintiffs have sufficiently alleged facts which constitute multiple acts of extortion by American inducing fear that if All World does not pay the Debit Memos, American will terminate the right of All World to issue airline tickets on American. Such alleged conduct involves more than a contractual dispute, and All World's § 1962(c) claim should not be dismissed on this basis.

Fifth, American claims that All World's RICO claims should be dismissed because All World has no preexisting right to do business with American, and thus has no right under RICO to be free of the conditions American placed on refunding tickets, paying Debit Memos, and continuing to act as an agent for American. American cites *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 526 for the proposition that the Hobbs Act does not place limits on the conditions a company can require of those who would do business with it.

■ The Court disagrees because All World alleges in the Complaint that American's threats or actions inflicted severe economic harm and prevented All World from conducting its business freely. The right to make decisions and to solicit business free from coercion is a protectable property right. *See, e.g., U.S. v. Santoni,* 585 F.2d 667, 672–73 (4th Cir.1978), *cert denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 459 (1979) (the right to make business decisions free from outside pressure wrongfully imposed will support a RICO claim), *U.S. v. Zemek,* 634 F.2d 1159, 1174 (9th Cir.1980), *cert denied sub nom Carbone v. U.S.,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981)("property under the Hobbs Act has not been

limited to physical or tangible 'things' "). In addition, allegations of threats by one business entity to cause economic harm to another if the latter does not agree to a change in contract or to pay a kickback is enough to establish the predicate offense of extortion or attempted extortion. *See Shields Enterprises, Inc. v. First Chicago Corp,* 975 F.2d 1290, 1296 (7th Cir.1992), *Westways World Travel v. AMR Corp.,* 182 F.Supp.2d 952, 956.

*Brokerage Concepts* is also distinguishable because in that case, there was no evidence that the Defendant attempted to obtain property for which it had no lawful claim, nor evidence that in violation of law it denied Plaintiff access to solicit business. *See Brokerage Concepts, Inc.,* 140 F.3d 494, 522 (3rd Cir.1998). By contrast, in this case, All World alleges that American utilized threats to terminate All World's ticketing rights, solely for the purpose of obtaining All World's money, money that All World alleges American is not lawfully entitled to claim.

The Court concludes that All World has stated valid RICO claims.

### E. PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

1. *Whether All World is Entitled To Injunctive Relief*

■ Injunctive relief is not available to a private plaintiff in a civil RICO action in the Ninth Circuit. *Religious Tech. Ctr. v. Wollersheim,* 796 F.2d 1076, 1084 (9th Cir. 1986), *Oregon Laborers Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957, 967–68 (9th Cir.1999). American maintains that All World's RICO claims cannot support injunctive relief. All World does not disagree.

American also argues that the Complaint does not plead sufficient facts to support an injunction under the breach of contract claim. The "basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." *Los Angeles Memorial Coliseum Comm. v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir.1980). Moreover, "monetary injury is not normally considered irreparable." *Id.* at 1202. American maintains that All World has not made any non-conclusory allegations that the damages suffered by All World could not be addressed through monetary awards.

■ American ignores the continuing nature of the wrongs alleged in the complaint. All World has alleged that American has threatened it with dire financial consequences and that American will continue to do so unless enjoined. These allegations are sufficient to survive a motion to dismiss. *See, e.g., Bronson v. Bd. of Education of City School Dist. of Cincinnati,* 550 F.Supp. 941, 957–58 (S.D.Ohio 1982)(refusing to dismiss injunctive relief complaint even though plaintiff failed to obtain preliminary injunction, holding that "[b]ecause the averments in the Complaint herein, if taken as true, could establish the presence of a harm for which no adequate remedy at law would exist, the Complaint may not properly be dismissed").

The Court concludes that All World may pursue its claim for injunctive relief on its breach of contract claim, and American's motion to dismiss All World's claim for injunctive relief must be denied.

2. *Whether All World is Entitled to Declaratory Relief*

American claims that declaratory relief is also barred under RICO. American contends that the reasoning of *Wollersheim, supra,* 796 F.2d at 1084, holding that injunctive relief is not available to a private party in a civil RICO action, is also applicable to a private party seeking declaratory relief.

The Ninth Circuit has not looked at the precise question whether declaratory relief is available to a private party in a civil RICO action. The Court need not decide the issue here because All World's claim for declaratory relief is appropriate and sufficient under All World's state law allegations. The court thus will deny American's motion to dismiss All World's claim for declaratory relief.

### III. DISPOSITION

Accordingly, IT IS ORDERED.

(1) American's motion to dismiss All World's complaint is denied, and

(2) American shall file an Answer to the Complaint no later than eighteen (18) days from the date of this Order.